**COOPER et al. v. UNITED STATES.**

No. 8331.

Circuit Court of Appeals, Fifth Circuit.

June 30, 1937.

S. D. Bennett, of Beaumont, Tex., for appellants.

Harvey G. Fields, U. S. Atty., and J. Fair Hardin, Whitfield Jack, and Malcolm Lafargue, Asst. U. S. Attys., all of Shreveport, La.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

Will Cooper, Johnny Cooper, and Alexander Cormier were convicted in the District Court for the Western District of Louisiana for conspiracy to violate the internal revenue laws relating to distilled liquors and for eight substantive offenses against those laws. They were each sentenced to two years' imprisonment on the conspiracy count, and the record thus continues: "On the remaining counts on which the accused were convicted by the jury the court ordered that the imposition of the sentence be suspended for a period of five years conditioned upon their not again violating any law, State or federal, during said period of suspension or probation." On this appeal by all of them the assignments of error make four points: (1) That a demurrer to the indictment should have been sustained; (2) that an accountant should not have been allowed to make and testify concerning a summary of certain books of account; (3) that each defendant should have had an instructed verdict in his favor for variance or for lack of evidence to convict; (4) that final sentence should on defendants' demand have been pronounced on all counts.

■ 1. The objection to the conspiracy count rests on these words in it: "Will Cooper, Johnny Cooper, Alexander Cormier, whose names are to your Grand Jurors unknown, hereafter called defendants, did knowingly, wilfully and unlawfully conspire * * * with each other and with other persons whose names are not known to your Grand Jurors to commit certain offenses" which are fully set forth. "That said unlawful agreement and conspiracy was to be and was in fact carried into effect in substantially the following manner, towit: Will Cooper, Alexander Cormier and Johnny Cooper caused to be constructed the bootleg stills. These three defendants then caused all of the other named defendants to transport said illicit stills * * * and operated by all the above named defendants acting together. * * *" It is contended first that to name the accused and then to state that their names are unknown renders the indictment repugnant and void. No authority is cited. Probably the indictment, following a common form, was intended to read: "Whose names otherwise are to your Grand Jurors unknown." The tenor of the whole indictment is to charge the three appellants by specified names with being the principal actors in the unlawful enterprise. The statement that their true names are unknown is surplusage. No misnomer is pleaded by them. The indictment is sufficiently certain.

■ It is next argued that the count is meaningless because it alleges that these three caused "all the other named defendants" to transport the stills and operated them all together, there being no other named defendants. The copy of the indictment in the record shows that as first written there were twenty-two other defendants named, but their names were stricken out by the grand jury. By a bill of particulars which was requested and furnished the defendants were informed that these persons so stricken were contended to be coconspirators under count 1. There was left no real doubt as to what the count meant, and no prejudice to any substantial right of the appellants resulted. The criticized allegation is only one in a long description of what was done, and, if meaningless in itself, enough remains to fully describe the conspiracy.

■ The other counts which are for substantive offenses do not name any one, but each charges "the said defendants." The three persons named in count 1 and there stated to be "hereafter called defendants"

are by a sufficiently plain reference identified as the accused.

█ 2. The managers of two grocery stores each identified seventy-odd books of account from his store as containing very numerous entries of purchases of sugar, rye, and oak chips, useful in making whisky and bought by Will Cooper and Alexander Cormier separately during the period of the alleged conspiracy, some having been charged in the name of the respective purchasers and others at their several requests being charged under another name or a symbol such as XX or XZ. The books themselves were admitted in evidence. An accountant was then used by the prosecution as a witness, who produced detailed summaries showing the dates and amounts of the purchases, those charged to Will Cooper and those to Alexander Cormier, and testified to the results over the defendants' objection that the original books being in court were the best evidence, and that the accountant's statements were but hearsay and operated to deny the confrontation by the witnesses guaranteed to an accused person by the Constitution (Amendment 6). Counsel have argued the applicability of the Act of June 20, 1936, § 1 (28 U.S.C.A. § 695), touching the admissibility of business books and entries, which was passed since this indictment was returned, and which declares that it shall not be retroactive. That act relates to the admission of books in evidence, and no error is here assigned as to that. We have no occasion to examine the statute or review the ruling admitting the books. The assignment of error runs only to permitting the summarization of them by the accountant. The trial court may in its discretion allow a competent person who has examined extensive or complicated books or records to collate their contents and testify to the results, provided that thorough cross-examination be allowed and that the books and records be at hand for use therein. Without such aid a court and jury, and counsel also, would have great difficulty and would require much time to get into useful form the information in the books. The accountant here was cross-examined so far as desired, and reference could have been made to the books to verify each item of his summary. The accused was confronted by all the witnesses used against him. The accountant indeed gave no original evidence but was rather a sort of interpreter to inform the court and jury and the accused what the books really said. Admitting his evidence was no error of practice nor a deprivation of constitutional right.

█ 3. It is contended that the indictment's allegation of the conspiracy as "beginning on or about Aug. 1, 1934, and continuing until on or about April 4, 1936," is descriptive, and that the proof, as was held by the judge, showed a termination of it April 30, 1935, whereby a variance was established entitling the accused to a discharge on that count. Allegations of time in an indictment need not in general be strictly proven unless the charge is of an offense which could be committed only at that time, as for instance on a Sunday. We see no reason why the time at which a conspiracy was formed or at which it ended should stand under any other rule. Moreover, the allegation here is not of an exact date but "on or about," so that no one could have been misled. That the conspiracy is not proven to have lasted so long as was alleged is not a ground to acquit the conspirators.

█ Another variance claimed is that the evidence showed two or more separate conspiracies instead of one, as alleged. If such a conspiracy as is alleged was proven, there could be conviction for it, although the evidence showed also another which was not alleged. Evidence of the latter should be excluded if irrelevant to the proof of the former, but it would not work a variance, nor will the failure to connect all the alleged conspirators with the conspiracy work a fatal variance. The whole subject of variance in connection with conspiracy charges was reviewed in Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314, and the result reached that only such a variance as substantially injures the defendant is material. No such variance appears in this case.

█ The evidence abundantly sustains the conviction of Will Cooper and Johnny Cooper under all counts. That they resided in Texas and are not proven to have gone into Louisiana does not prevent their conviction for acts done in Louisiana by their procurement. All participants in crime are principals under federal law. If the Coopers provided the stills, and the materials and hired persons to operate them in Louisiana, the resulting crimes are committed in Louisiana and the Coopers may be there prosecuted for them. The constitutional provisions as to venue in article 3, § 2, and in the Sixth Amendment,

require trial where "the crime shall have been committed," not where the accused was when the crime was committed. Burton v. United States, 202 U.S. 344, 26 S.Ct. 688, 50 L.Ed. 1057, 6 Ann.Cas. 362; Haas v. Henkel, 216 U.S. 462, 30 S.Ct. 249, 54 L.Ed. 569, 17 Ann.Cas. 1112.

■ But the evidence is insufficient as to Cormier. He bought an abundance of material, and had a copper boiler made, and no doubt was engaged in distilling, but he is not connected by any direct evidence with the operations of the Coopers, and the only circumstances connecting him with them are that he sent by Will Cooper the money to pay for making his copper boiler, and that the Coopers ran a copper still made by the same man. In explanation of the first circumstance, all the witnesses say that the money sent through Cooper was in a sealed envelope, and there is nothing to show that Cooper knew what it was for. As to the second circumstance, there is no identification of the copper still of the Coopers with that of Cormier, but Cormier testifies that he had nothing to do with the Coopers' still and they had nothing to do with his; that his was raided and destroyed on January 30, 1935, on the Holland farm in Texas, and had never been used anywhere else, and that he was arrested and pleaded guilty in Texas for it. The officers corroborate him as to this. The Coopers' copper still was destroyed in April, 1935. The whole evidence is consistent with the theory that Cormier had, as he testifies, a separate distilling enterprise having no connection with that of the Coopers. He was entitled to an instructed verdict under the evidence.

■ 4. The Coopers moved the court to finally sentence them instead of suspending sentence on counts 2 to 9, inclusive, and they contend that the refusal denies them the speedy trial guaranteed by the Sixth Amendment of the Constitution. It is true that a trial is not complete until sentence is passed, and that the record cannot be held open unreasonably. But the court here evidently acted under the Probation Act, § 1, 18 U.S.C.A. § 724, which expressly sanctions the suspension either of the imposition of sentence or of its execution after imposition provided the convicted person is put on probation under the act. The probation is not pardon, either absolute or conditional, for the power of pardon is vested in the President. It is an authorized mode of mild and ambulatory punishment, the probation being intended as a reforming discipline. The probationer is not a free man, but is subject to surveillance, and to such restrictions as the court may impose. We do not agree with appellants' contention that probation, like pardon, may be refused by the convicted person. The act vests a discretion in the Court, not a choice in the convict. The probation here imposed is rather loose and informal, but is authorized by the act.

The judgment is accordingly affirmed as to Will Cooper and Johnny Cooper, but reversed as to Alexander Cormier for further proceedings against him not inconsistent with this opinion.