**WEBER v. SQUIER, Acting Warden.**

No. 9846.

Circuit Court of Appeals, Ninth Circuit.

Dec. 29, 1941.

Writ of Certiorari Denied Mar. 2, 1942.

See 62 S.Ct. 800, 86 L.Ed. ——.

Max Weber in pro. per. for appellant.

J. Charles Dennis, U. S. Atty., and Frank Hale and Gerald Shucklin, Asst. U. S. Attys., all of Tacoma, Wash., for appellee.

Before DENMAN, STEPHENS, and HEALY, Circuit Judges.

STEPHENS, Circuit Judge.

Appellant, or petitioner as we shall hereinafter designate him, is confined in a United States penitentiary and he claims the right to freedom through the medium of the writ of habeas corpus filed in the District Court. That court issued its show cause order and after hearing declined to issue the writ and dismissed the petition. This appeal followed.

The record shows upon its face that petitioner pleaded guilty in the District Court to counts numbers two and four of an indictment containing several charges of a felonious character.

On September 13, 1934, petitioner was sentenced, the pronouncement of the judge being in part as follows:

"On the fourth count, it is the judgment of the Court that * * * Weber, * * * be confined * * * for the term and period of two (2) years in the U. S. Penitentiary at McNeil Island, Washington on the fourth count; and with respect to the second count * * * Weber is sentenced to serve a term of

five (5) years in McNeil Island Penitentiary and the execution of sentence is suspended and said defendants [including others] placed upon probation for five (5) years to begin now, on the second count, which will mean for three (3) years after the termination of sentence * * *."

After serving the penitentiary term of two years (less good behavior allowance) he was released from prison and thereafter and on June 7, 1938, he was brought before the court for the violation of his probation and was recommitted to prison, the following being the order in part: " * * * the defendant, Max Weber, having under date of September 13th, 1934, been sentenced to the United States Penitentiary at McNeil Island for the term and period of five years on the second count, and said sentence having been suspended, and defendant having been granted probation on said second count for five years; and, under date of June 7th, 1938, after hearing on revocation of probation for violation of probation, the court having revoked the probation of Max Weber, and having ordered that said defendant Max Weber serve the five years' Penitentiary sentence on the second count;

"It Is by the Court Ordered and Adjudged that the defendant be hereby committed to the custody of the Attorney General for imprisonment in an institution of the Penitentiary type to be designated by the Attorney General or his authorized representative for five years on the second count; * * *."

Petitioner claims that the suspension of the sentence to the prison and the granting of probation on count two was and is entirely void, and that the sentence to five years in the penitentiary on this count became effective with its pronouncement and ran concurrently with the sentence on count four; that he has served his sentences under both counts and should be released from restraint.

To understand the issue it will be well to recall that power of the District Court to suspend sentences and to release a convicted person under probation, although long assumed by the U. S. District Courts, was held without basis in law by Ex Parte United States, 1916, 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129, L.R.A.1917E, 1178 Ann. Cas.1917B, 355.

There after a probationary system for U. S. Courts became law by the Act of March 4, 1925, c. 521, 43 Stat. 1259, 18 U.S.C.A. § 724.

In United States v. Murray (Cook v. United States), 275 U.S. 347, 48 S.Ct. 146, 149, 72 L.Ed. 309, the Supreme Court had this act before it in the consideration of two appeals which it covered in one opinion. In two instances U. S. District Courts had made orders granting probation to persons who had theretofore been sentenced to imprisonment and who had already begun to serve such sentence. In the case of Murray the U. S. Circuit Court had affirmed and in the case of Cook the U. S. Circuit Court had reversed.

Chief Justice Taft, writing for the court, analyzed the Probation Act and said that since the Act specifically limits the power to grant probation to a time after conviction or after a plea of guilty the question for decision was—"Before what time must it be granted?". In other words could it be granted after the person convicted had started to serve his sentence.

The Chief Justice reasoned that it would be unlikely that congress would grant authority to judges to change a sentence at any time during its running time as such a power would tend to cause complications with the executive clemency powers or with the Board of Parol; that it would unnecessarily add to the heavy burdens of District Judges. He referred to the fact that the practices of suspending sentences were perforce discontinued under the pronouncement in Ex Parte United States, supra and said: "The great desideratum [in enacting such legislation] was the giving to young and new violators of law a chance to reform and to escape the contaminating influence of association with hardened or veteran criminals in the beginning of the imprisonment". He holds: "The beginning of the service of the sentence in a criminal case ends the power of the court even in the same term to change it. Ex Parte Lange, 18 Wall. 163, 21 L.Ed. 872. Such a limit for probation is a natural one to achieve its end." Upon this reasoning the Supreme Court held void the grant of probation in each of the two cases under consideration.

Subsequent to the decision in this case which we shall hereinafter call the Murray case, supra the U. S. Court of Appeals for the Second Circuit had before it on appeal from the District Court, 14 F.Supp. 368, a case (United States v. Greenhaus, 85 F.2d 116, 107 A.L.R. 630) in which there

620

had been a conviction on a number of counts of a single indictment charging fraud and conspiracy to defraud and one Greenhaus had been sentenced to the penitentiary upon all of the counts of which he had been found guilty and upon some of such counts, but not all, sentence was suspended and probation granted. The sentences not suspended ran concurrently for three years each, those suspended ran concurrently for five years each.

Upon serving the required time for the sentences not suspended Greenhaus was released from prison under direction to report to the probation officer under the probation orders. Thereafter his probation was revoked for cause and he was sentenced to the penitentiary upon the counts that the trial court had ordered suspended and he appealed. The Circuit Court of Appeals for the Second Circuit, upon authority of the Murray case held that the sentences of Greenhaus which provided that probation for five years on several counts should follow penitentiary confinement for three years on several others were inconsistent with the reasons advanced for the decision in the Murray case.

The Circuit Court considered the sentences for the purposes of the Probation Act on all of the counts as constituting a single term or sentence and held, in the circumstances, that the trial court did not have the power to suspend sentence pronounced and to grant probation on part of such counts while ordering him to the penitentiary upon others thereof. It therefore sustained the District Court's order committing Greenhaus to serve the sentence pronounced on the counts originally suspended. This holding was contrary to the already expressed view of the Tenth Circuit in White v. Steigleder, 37 F.2d 858, in which case that court held that sentences on different counts of one indictment for purposes of the Probation Act should be treated as separate sentences. Certiorari was denied in the Greenhaus case. 299 U.S. 596, 57 S.Ct. 192, 81 L.Ed. 439.

Later the Second Circuit in Kelly v. United States, 1937, 89 F.2d 866, considering an appeal from the District Court, held that the rule of the Greenhaus case was not to be applied or extended to cases where conviction had been had on separate indictment notwithstanding the several crimes were connected in purpose and motive and the sentences therefor had been pronounced at the same court sitting. This

ruling was sustained upon appeal (Frad v. Kelly, 302 U.S. 312, 58 S.Ct. 188, 191, 82 L.Ed. 282), the Supreme Court saying "The mere fact that a sentence of a fine and imprisonment had been imposed upon one of the indictments in no way militated against the prescription of probation in respect of the plea of guilty under the other two." It should here be noted that no mention of the Greenhaus case is made by the U. S. Supreme Court in its opinion and no language is used directly showing either the approval or rejection of the theory advanced by the Circuit Court in that case.

It is interesting at this juncture to note that the Supreme Court in the Frad-Kelly case commented upon the fact that the Probation Act authorizes the court to supervise the conduct of the probationer not only during the period of probation when he was bound to make such reports of his doings as might lawfully be required but afterwards up to the time when the maximum sentence which could have been imposed would have expired. See also United States v. Moore, 2 Cir., 101 F.2d 56, 58.

The Second Circuit followed the Greenhaus case in the case of United States v. Cosman in 94 F.2d 1020 and the Supreme Court reversed in 303 U.S. 617, 58 S.Ct. 527, 82 L.Ed. 1083 without opinion but specifically upon authority of Frad v. Kelly, supra. In a note to our opinion in Remer v. Regan, 9 Cir., 104 F.2d 704 it appears that there existed in the Cosman case a factual situation similar to the one in the Greenhaus case so far as immediate incarceration under one count and the suspension of sentence under probation on another count of the same indictment are concerned. The prisoner serving imprisonment under one count was paroled and thereafter was brought before the court upon charges of violating the terms of his parol. The court found that there had been no violation but under authority of Greenhaus recommitted the parolee to serve the sentence theretofore imposed for the counts upon which probation had been granted. As mentioned the Supreme Court reversed.

It is thus seen that the Supreme Court has discerned no difference in principle so far as the application of the Probation Act is concerned between sentences pronounced under separate indictments and those pronounced under separate counts of a single indictment. This court (C.C.A. 9th) citing the Cosman case in our opinion in Remer v.

Regan, supra regarded the doctrine of the Greenhaus case as being overruled.

Since the doctrine of the Greenhaus case appears to be overruled and disapproved there was nothing wrong with the District Court's order in the instant case in sentencing petitioner to the penitentiary upon one count and at the same time sentencing him and suspending sentence under a period of probation under another count of the same indictment.

With this point out of the way another question arises: It is apparent from the wording of the court's original sentence in the instant case that the term of probation for the sentence suspended was to begin running concurrently with the sentence not suspended and that if uninterrupted by any other event petitioner would spend his two years in prison and be out on probation for three years thereafter, or five years after sentence. (Good time is not considered in this statement). Five years from September 13, 1934, would fix the expiration of probation at September 13, 1939 (again not considering good time element), and he would be free from the probation order.

But an important event did intervene. On June 7, 1938, after having served his prison sentence under Count four and while out of prison under the probation order as to Count two, petitioner's probation was revoked and he was committed to prison for five years, or for the original time for which he was sentenced under Count two. Without considering for the moment any point as to whether the time spent in prison was concurrently running as on the sentences under both counts, this resentence was valid since the Probation Act in subdivison two, as was commented upon by the Supreme Court in Frad v. Kelly, supra, gives the District Court the power to sentence, after revoking probation, for any period of time not exceeding the maximum time prescribed by law for the crime. We quote from the Act:

"At any time within the probation period the probation officer may arrest the probationer wherever found, without a warrant, or the court which has granted the probation may issue a warrant for his arrest, which warrant may be executed by either the probation officer or the United States marshal of either the district in which the probationer was put upon probation or of any district in which the probationer shall be found and, if the probationer shall be so arrested in a district other than that in which he has been put upon probation, any of said officers may return probationer to the district out of which such warrant shall have been issued. Thereupon such probationer shall forthwith be taken before the court. At any time after the probation period, but within the maximum period for which the defendant might originally have been sentenced, the court may issue a warrant and cause the defendant to be arrested and brought before the court. Thereupon the court may revoke the probation or the suspension of sentence, and may impose any sentence which might originally have been imposed." 18 U.S.C. A. § 725. See United States v. Murray, Frad v. Kelly, Remer v. Regan, supra.

The matter of the possible concurrent running of the two sentences for the period served in the penitentiary before the revocation of probation will now be considered.

If we were to follow the Greenhaus case we would be compelled to hold that the probationary part of the sentence in the instant case was void and the sentence to which probation was directed would be unqualified and would begin to run immediately. Therefore the petitioner would have served time in the penitentiary under both counts for the period he was confined in the penitentiary. But as has been seen, we do not follow the Greenhaus doctrine, but hold that sentence to the penitentiary under one count and suspension of sentence with probation under another count is altogether a valid proceeding. Being valid we examine the text of the court's order of sentence to get its meaning.

The text thereof, as heretofore herein quoted, shows clearly that the court had in mind that the suspension of sentence as to count two was immediately effective and that the probation period under this count should extend from the date of sentence for five years without regard to what would occur under count four. When the probation was revoked it plainly was within the court's jurisdiction and discretion to do exactly what it did do, to-wit: commit petitioner to the penitentiary for the period of his original sentence.

Affirmed.