EL PUEBLO DE PUERTO RICO, ETC., peticionario, *v.* EL TRIBUNAL DE DISTRITO DEL DISTRITO JUDICIAL DE SAN JUAN, HON. ARCILIO ALVARADO, JUEZ, demandado.

Núm. 1653.—*Sometido:* Junio 24, 1946. *Resuelto:* Julio 11, 1946.

*Hon. Procurador General E. Campos Del Toro, Edwin Cortés, Procurador General Auxiliar, y José C. Aponte, Fiscal del Distrito de San Juan,* abogados de El Pueblo, peticionario; *Hipólito Marcano,* abogado del acusado en el caso principal.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA emitió la opinión del tribunal.

La cuestión planteada en este recurso de *certiorari* es si un juez de distrito tiene facultad, de acuerdo con la Ley núm. 259 de 3 de abril de 1946 ((1) pág. 535), para suspender la sentencia impuesta a una persona convicta de homicidio involuntario, que es un delito menos grave (*misdemeanor*).

El artículo 2 de la Ley núm. 259 en lo pertinente dispone:

"El efecto de la sentencia que se imponga a toda persona que cometa cualquier delito grave que no sea asesinato en primer grado, deberá ser suspendido y el sentenciado puesto a prueba, siempre que, al tiempo de imponer dicha sentencia, concurran los siguientes requisitos. . . ."

El juez recurrido, fundándose en las disposiciones que acabamos de citar, suspendió la sentencia impuesta a una persona convicta de homicidio involuntario, por entender que ése es un "delito grave" dentro del significado de dichas disposiciones. El Pueblo solicita se anule la resolución del juez recurrido, sosteniendo que de acuerdo con la Ley núm. 259 la suspensión de la sentencia no procede en ningún caso de delito misdemeanor. El reo ha comparecido por su abogado y sostiene que la suspensión de la sentencia procede en todos los casos, sea o no grave el delito.

Consideremos en primer término el argumento del reo. Nos dice que "el legislador no puede intentar aplicar la ley sobre sentencias suspendidas por el grado del delito como tampoco puede el grado del delito alterar ni cambiar el propósito científico que persigue la ley." Concluye que cuando la legislatura autorizó la suspensión de sentencias en casos de "delito grave", quiso referirse a todos los delitos.

No podemos convenir con la contención del reo. La Ley núm. 259 sólo autoriza que se suspendan las sentencias en casos de delitos graves. No hay nada en la ley que nos autorice a concluir que la intención legislativa fuese otra que la que claramente expresó al utilizar el adjetivo "grave". Y aparte de lo que nos dice la propia ley, nada sabemos en cuanto al propósito legislativo, ya que aparentemente no existen constancias oficiales de vistas públicas, ni informes de los comités legislativos, ni debates en la legislatura, si es que hubo tales vistas, informes o debates. No tenemos base, por lo tanto, para alimentar dudas respecto a la interpretación de la ley, cuya letra claramente limita su alcance a ca-

sos de delitos graves. Es cierto que se nos hace difícil comprender por qué quiso la legislatura conceder la ventaja de la sentencia suspendida a las personas convictas de delitos graves, y negársela a las personas convictas de delitos que no sean graves.([1]) Pero nuestra falta de comprensión en cuanto al móvil del legislador no puede servir de excusa para ignorar la expresión clara de su intención.

Nos resta determinar si entre los delitos graves a que se refiere la ley cabe el homicidio involuntario. De acuerdo con el sistema de derecho penal angloamericano que rige en Puerto Rico, los delitos se dividen, de acuerdo con la pena que conllevan, en dos clases: el delito *felony* y el delito misdemeanor.([2]) Desde que se aprobó el Código Penal el primero de marzo de 1902, se ha venido traduciendo el término "felony" como "delito grave" y "misdemeanor" como "delito menos grave."([3]) A veces se usan los términos "felony" y "misdemeanor," sin traducir, en el texto castellano de la Ley;([4]) a veces se dice "delito grave (felony)" y "delito menos grave (misdemeanor)"([5]); a veces se dice "felony (delito grave)" y "misdemeanor (delito menos grave)"([6]) y a veces, particularmente en épocas recientes, como cuando el 4 de mayo de 1933 se aprobó la Ley núm. 34 (Leyes de 1932–33, pág. 265) para enmendar precisamente las disposiciones relativas a la pena con que se castiga el delito de homicidio involuntario que nos ocupa, se prescinde del término inglés y se utiliza solamente el castellano:

([1])La Ley núm. 19 de 12 de marzo de 1914 (Leyes de 1914, pág. 157) autoriza la suspensión de sentencias en causas misdemeanor, pero solamente en casos en que el acusado sea menor de 16 años o mayor de 60.

([2])Artículos 13 y 14, Código Penal de 1902.

([3])Véanse, por ejemplo, los artículos 13, 18, 63, 78, 87, 90, 91, 95, 126, 128, 147, 150, 203 y 209 del Código Penal.

([4])Véanse, por ejemplo, los artículos 14, 30, 36, 37, 42, 88, 92, 96, 97, 98 y 103 del Código Penal.

([5])Véanse, por ejemplo, los artículos 63, 78, 126, 147, 150, 203 y 209 del Código Penal.

([6])Véanse, por ejemplo, los artículos 18, 87, 91, 95 y 128 Código Penal.

". . . El homicidio involuntario. . . Será considerado como un delito menos grave a todos los efectos de la ley. . . "(7)

Resulta meridianamente claro, por lo tanto, que al autorizar la legislatura la suspensión de sentencias en casos de "delito grave", se refería a delitos felony. Se arguye en contrario, no obstante, que cada vez que la legislatura ha usado el término "delito grave" como equivalente de "felony" ha utilizado ambos términos, y que, puesto que en la Ley núm. 259 no usó el término "felony", quiso referirse a una clasificación de delitos, graves y menos graves, distinta a la que se define en el Código Penal, o sea, la clasificación histórica entre el felony y el misdemeanor. Una dificultad que encontramos con ese argumento es que no se nos ofrecen, ni se nos ocurren, normas para establecer esa otra clasificación, ni las ha establecido la legislatura. Si "delito grave" no significa "felony" en la Ley núm. 259, entonces ¿qué significa? ¿Cuáles son entonces los delitos graves a que se refiere la Ley núm. 259 y cuáles los menos graves? Ni el recurrido ni el abogado del reo han podido dar una contestación adecuada a la pregunta, ni se nos ocurre a nosotros. El recurrido ha sugerido que puede utilizarse "el significado general" o gramatical de la palabra "grave" para establecer la clasificación, y que de acuerdo con ese significado general o gramatical, la gravedad del delito depende de la gravedad de la pena. Pero entonces tendríamos que el significado general o gramatical del concepto "delito grave", no es distinto al significado técnico, ya que, de acuerdo con el artículo 14 del Código Penal, los delitos se clasifican como graves, o menos graves (felonies y misdemeanors) de acuerdo con la gravedad de la pena. Es cierto que según el artículo 14 del Código Penal la gravedad de la pena depende de la calidad más bien que de la cantidad del castigo, considerándose grave la pena de presidio y menos grave la de cárcel o multa, y que muchas personas pueden tener un concepto

(7) Artículo 204, Código Penal.

de gravedad distinto al que se expone en el Código. Podría, por ejemplo, existir en la mente de algunas personas el concepto de que es grave una pena de seis meses, aunque sea de cárcel, o una multa de $1,000. Otras personas podrían considerar grave cualquier pena de cárcel. Algunas podrían considerar grave una multa de $25, y otras leve una de $100. Pero no conocemos, ni se nos ha sugerido, ninguna clasificación de delitos entre graves y menos graves, basada en la relativa gravedad de la pena, y que tenga aceptación general, que no sea la clasificación hecha en el artículo 14 del Código Penal. No tenemos base por lo tanto para decir que la legislatura tuviese en mente alguna clasificación distinta a la que se hace en el Código Penal.

Por otra parte, el argumento de que, porque hasta ahora la legislatura al quererse referir al felony haya utilizado las palabras "delito grave (felony)", la omisión por primera vez[8] del término inglés felony en la Ley núm. 259 indica que no quiso referirse la legislatura al felony, no nos convence. No habiendo en Puerto Rico en el 1902 palabras claramente equivalentes al significado clásico de los términos "felony" y "misdemeanor", era natural que al principio, al traducir esos términos al castellano, se acompañara su equivalente en inglés. Pero la expresión del equivalente era una necesidad pasajera, hasta tanto el uso de las palabras "delito grave" y "delito menos grave" les diera el significado técnico que originalmente no tenían. Como hemos visto, ya en el 1933, al enmendar la legislatura el artículo 204 del Código Penal, supra, definió el delito de homicidio involuntario como un delito menos grave, y no consideró necesario añadir en paréntesis "misdemeanor." En algún momento tenía que ocurrir lo mismo con "felony", si es que en verdad la Ley núm. 259 es la primera que prescinde de ese

---

(8)No nos hemos detenido a examinar si la Ley núm. 259 es o no la primera en Puerto Rico que al usar la expresión "delito grave" omita su equivalente en inglés.

término. Por lo tanto, la ausencia de la palabra "felony" en la Ley núm. 259 a nuestro juicio carece de especial importancia en la interpretación de la ley.

Probablemente nos hemos extendido demasiado en la consideración del alcance y significado de la expresión "delito grave" según se usa en la Ley núm. 259. La expresión tiene un significado bien definido y cimentado en nuestra legislación y jurisprudencia, y un significado único: significa felony. La Ley núm. 259 sólo autoriza la suspensión de sentencia, por lo tanto, en casos felony. El delito de homicidio involuntario no es felony, y por lo tanto la Ley núm. 259 no autoriza la suspensión de la sentencia en el caso de autos.

*Debe anularse la sentencia dictada por la corte inferior y devolverse el caso para que se pronuncie la sentencia que proceda.*