Mr. Chief Justice De Jesús did not participate herein.

JUANA DE JESÚS DE MORALES, ETC., Petitioner, *v.* CASTO RAMÍREZ, WARDEN, DISTRICT JAIL OF HUMACAO.

No. 467. Argued March 6, 1951.—Decided March 20, 1951.

Oscar R. Brizzie for petitioner. Víctor Gutiérrez Franqui, Attorney General, J. Rivera Barreras, Fiscal of the Supreme Court, and Frank Vizcarrondo Vivas, Assistant Fiscal, for respondent.

MR. JUSTICE SNYDER delivered the opinion of the Court.

On November 2, 1945 Simón Morales Pagán was tried in the district court at the same time on charges of mayhem and carrying a prohibited weapon which arose out of the same facts. He was convicted on both charges and appealed to this Court from judgments sentencing him to imprisonment of 4 years and 4 months, respectively. On November 8, 1946 we dismissed these appeals. On January 10, 1947, on petition of the defendant, the lower court suspended the 4 year sentence and placed the defendant on probation pursuant to Act No. 259, Laws of Puerto Rico, 1946. On the same date, at the request of the defendant, the lower court suspended execution of the 4 month sentence until completion of the probationary period on the mayhem sentence. On January 10, 1951, after expiration of the probationary period, the lower court ordered execution of the 4 month sentence. A commitment to that effect was duly issued; the lower court denied a motion for reconsideration; and the defendant went to jail. We issued a writ of habeas corpus to determine the legality of this detention.

The first question to determine is whether we agree with the petitioner that the lower court lacked the power to suspend execution of the 4 month sentence. The Assistant Fiscal of this Court concedes that the district court lacked this power and that its action in this respect was null. We

cannot accept this concession. It is true that under §§ 327 and 329 of the Code of Criminal Procedure, 1935 ed., the general rule is that no such power exists.[1] Consequently, once a sentence is final, it must be executed promptly, except where a statute specifically authorizes suspension, as in cases involving probation, abandonment of minors or persons more than 60 years of age.[2] But the general rule against suspension of execution of sentences does not apply here precisely because this was not a "suspension" in the sense that word is used in the general rule. That is to say, the 4 month sentence was not a sentence which stood alone and which would not have created any problem in connection with any other sentence if service thereof had begun forthwith. Rather a 4 year sentence for mayhem stood in the way of immediate execution of the 4 month sentence. And the former could be executed in one of two ways: (1) "service" outside the walls of a prison by compliance with the terms of probation; (2) revocation of probation for failure to comply with its terms and subsequent service of the sentence behind the bars of the penitentiary.

In those cases where probation is justified, service of the sentence by the first method is the primary objective of our probation statute, Act No. 259 of 1946. That was successfully achieved here. But in contemplation of law, service of the sentence by the first method outside the prison walls was just as much execution of the sentence as imprisonment. *Korematsu* v. *United States*, 319 U. S. 432, 435; *Roberts* v. *United States*, 320 U. S. 264, 267; *Cooper* v. *United States*,

---

[1] Section 327 reads as follows: "When a judgment has been pronounced, a certified copy of the original thereof must be forthwith delivered to the officer whose duty it is to execute the judgment, and no other warrant or authority is necessary to justify or to require its execution."

Section 329 reads as follows: "If the judgment is for imprisonment, or a fine, and imprisonment until it be paid, the defendant must forthwith be committed to the custody of the proper officer, and by him detained until the judgment is complied with."

[2] Act No. 259, Laws of Puerto Rico, 1946; § 263, Penal Code, 1937 ed.; Act No. 19, Laws of Puerto Rico, 1914.

91 F. 2d 195, 199 (C.A. 5, 1937).[3] Consequently, the 4 year probationary sentence was one which required service forthwith, either in the penitentiary or outside prison walls depending on the defendant's conduct. Under these circumstances, pursuant to Act No. 108, Laws of Puerto Rico, 1943, the trial court was authorized to impose the consecutive sentences it entered here; *i.e.*, that the 4 month sentence shall be served after execution (either inside the penitentiary or outside the penitentiary under probation) of the 4 year sentence.[4]

 The district court was faced with a difficult problem in this case. . The theory behind probation is that it should be granted in cases where it is justified to avoid any incarceration whatsoever. *United States* v. *Murray*, 275 U. S. 347. This theory could not be effectuated fully in the instant case because the lower court lacked the power to suspend the 4 month sentence.[5] In view of this dilemma,

---

[5] When it imposed the sentences in 1947, the lower court lacked the power to place the defendant under probation for the 4 month sentence because Act No. 259 of 1946 permitted probation only in certain felony cases. *People* v. *District Tribunal*, 66 P.R.R. 379. Act No. 259, as amended by Act No. 177, Laws of Puerto Rico, 1949, still does not authorize probation in misdemeanor cases. This is so even if the latter as here arise out of the same facts for which the defendant receives another sentence on a felony charge which is suspended.

[4] Act No. 108 repealed § 31 of the Penal Code, which permitted consecutive sentences only where conviction of the second offense was had prior to sentence on the first charge. Under § 2 of Act No. 108 the trial judge determines if terms of imprisonment shall be consecutive or concurrent. Section 3 provides among other things that the terms shall not be concurrent "(c) When the prison terms are imposed to be served in different penal institutions." Section 5 provides that in the absence of any provision by the trial court, sentences shall be served consecutively. *Cf. Ruiz* v. *Saldaña, Warden*, 58 P.R.R. 636, and *People* v. *Acevedo*, 60 P.R.R. 90, which were decided under § 31 of the Penal Code, which as noted was repealed by Act No. 108.

[3] In the *Korematsu* case the Supreme Court cited with approval the *Cooper* case. In the latter the court said at p. 199 that probation "is an authorized mode of mild and ambulatory punishment, the probation being intended as a reforming discipline. The probationer is not a free man, but is subject to surveillance, and to such restrictions as the court may impose."

perhaps it would have been more appropriate, from the point of view of rehabilitation, to require service of the 4 month sentence in jail prior rather than subsequent to the probationary sentence. But the lower court had the legal power to provide the latter as it did in this case. *Frad* v. *Kelly*, 302 U. S. 312; *Weber* v. *Squier*, 124 F. 2d 618 (C.A. 9, 1941).

As we are of the view that the lower court had the power to postpone execution of the 4 month sentence until after completion of the probationary period of the 4 year sentence, we could discharge the writ without further discussion. However, one of the purposes of issuing the writ was to determine a second and perhaps more important question; namely, whether a trial court may order execution of a sentence a number of years after the sentence was imposed but illegally suspended. The Assistant *Fiscal* of this Court as we have seen conceded that the 4 month sentence was illegally suspended and argued only this second question. Both parties have argued this point and the Assistant *Fiscal* has urged us to re-examine and overrule *People* v. *Acosta*, 10 P.R.R. 291. Under all the circumstances we think it is in the public interest to decide this question.

The headnote of the *Acosta* case reads as follows: "A court has no authority to suspend the execution of its sentence in a criminal case or to leave it without effect, but if it does so and permits the prisoner to remain at liberty or to go out of its custody, it loses its jurisdiction over him and it lacks the power to sentence him again or to declare in force the sentence which it had previously revoked." As the concurring opinion of Mr. Justice MacLeary indicates, it could be argued that the facts of the *Acosta* case did not require the court to pass on the question determined by the majority of the court. However, in order to clarify the law in this jurisdiction, we shall assume that the *Acosta* case is a holding rather than a dictum on this point.

The *Acosta* case is contrary to the cases interpreting statutes identical with or similar to ours. The great weight of

authority is that where sentence has been pronounced in a criminal case, but a void order has been entered suspending the execution of the sentence, the defendant may be required to pay his suspended fine or serve his suspended term in prison notwithstanding the unauthorized order suspending the execution of the sentence. The enforcement of the sentence which has been suspended without authority may take place at any time after the suspension thereof, even after the expiration of the term at which the void order was entered. Moreover, the majority of the cases hold that the defendant may be required to serve a sentence of imprisonment even after the lapse of the period which he should have served in prison, since the sentence of imprisonment is satisfied, not by the lapse of time, but by the actual service of the sentence in prison, and for all practical purposes the defendant is in the position of one who has escaped from prison during the time he is at liberty under the suspension of the execution of sentence. Annotation, 141 A.L.R. 1225, 1229–31.[6]

The courts following the majority rule frequently quote from *Morgan* v. *Adams*, 226 F. 719, 720–21 (C.A. 8, 1915) that ". . . the conclusion forced upon our minds is that, if the order suspending such a sentence is illegal, it is so not because it is irregular or technically defective, but because it is beyond the power of the court, and it is therefore void, and the sentence stands, and is enforceable by the court at any time after its rendition, either before or after the term of the court, until the convict has suffered the penalties it imposes. Even if the order of suspension is embodied in the

---

[6] To the same effect, *United States* v. *Hill*, 4 F. Supp. 748 (Dist. Ct., Pa., 1933); *Ex parte Clark*, 234 P. 109 (Cal., 1925); *In re Nottingham*, 268 P. 587 (Col., 1928); *Ex parte Jennings*, 267 P. 227 (Idaho, 1928); *Dawson* v. *Sisk*, 4 N. W. 2d 272 (Iowa, 1942); *Burnstein* v. *Jennings*, 4 N. W. 2d 428 (Iowa, 1942); *State* v. *Parks*, 36 N. E. 2d 42 (Ohio, 1941); *State* v. *Gore*, 29 S. E. 2d 476 (W. Va., 1944); *Steadman* v. *State*, 37 S. 2d 357 (Miss., 1948).

*Miller* v. *Aderhold*, 288 U. S. 206, also reached the same result in the analogous situation where imposition rather than execution of sentence was suspended. And see *Ex parte Martin*, 185 P. 2d 645 (Calif., 1947).

judgment which imposes the sentence, nevertheless the sentence is authorized and valid, while the order of suspension is unauthorized and void, and, as the latter is separable from the former, the latter falls, while the sentence stands. 'Concede', says Judge Young in *State ex rel. Buckley* v. *Drew*, 75 N. H. 402, 74 Atl. 875, 'that the court had no authority to suspend the [defendants'] sentences, and the fact still remains that it had power to impose them; and, as the two parts of the order are separate and distinct, the illegality of the last part would in no way affect the validity of the first part.' "

We agree with the foregoing authorities. *People* v. *Acosta*, *supra*, is therefore overruled. Even under the assumption that the suspension of the execution of the 4 month sentence was illegal, the lower court was not only empowered but required to order its execution when the illegality of the suspension thereof was called to its attention.

The writt of habeas corpus will be discharged.