El Juez Presidente Sr. De Jesús no intervino.

JUANA DE JESÚS DE MORALES, a nombre de su esposo, SIMÓN MORALES PAGÁN, peticionaria, *v.* CASTO RAMÍREZ, ALCAIDE, CÁRCEL DE DISTRITO DE HUMACAO.

Núm. 467.—*Sometido:* Marzo 6, 1951.  *Resuelto:* Marzo 20, 1951.

*Oscar R. Brizzie,* abogado de la peticionaria; *Hon. Procurador General Víctor Gutiérrez Franqui, J. Rivera Barreras, Fiscal del Tribunal Supremo* y *Frank Vizcarrondo Vivas, Fiscal Auxiliar,* abogados del querellado.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

El 2 de noviembre de 1945 Simón Morales Pagán fué juzgado ante el tribunal de distrito al mismo tiempo por los delitos de mutilación y portar armas que surgieron de los mismos hechos. Fué convicto en ambos casos y apeló para ante este Tribunal de las sentencias que le impusieron 4 años de presidio y 4 meses de cárcel, respectivamente. El 8 de noviembre de 1946, desestimamos estas apelaciones. El 10 de enero de 1947, a solicitud del acusado, la corte inferior suspendió la sentencia de 4 años y puso al acusado en probatoria a tenor con la Ley núm. 259, Leyes de Puerto Rico, 1946 ((1) pág. 535). El mismo día, y a petición del acusado, la corte inferior suspendió la ejecución de la sentencia de 4 meses hasta que se cumpliera el período probatorio de la sentencia de mutilación. El 10 de enero de 1951, luego de expirar el período probatorio, la corte inferior ordenó que se ejecutara la sentencia de 4 meses. Se expidió el correspondiente mandamiento; la corte inferior denegó una moción de reconsideración; y el acusado fué encarcelado. Expedimos el auto de hábeas corpus para determinar la legalidad de su encarcelación.

La primera cuestión a resolver es si convenimos con el peticionario en que la corte inferior carecía de poder

para suspender la ejecución de la sentencia de 4 meses. El Fiscal Auxiliar de este Tribunal admite que la corte de distrito carecía de tal autoridad y que su actuación a este respecto fué nula. No podemos aceptar esta admisión. Es cierto que bajo los artículos 327 y 329 del Código de Enjuiciamiento Criminal, ed. de 1935, la regla general es que no existe tal autoridad.[1] Por consiguiente, una vez que la sentencia es firme, ésta debe ejecutarse prontamente, excepto cuando un estatuto expresamente autoriza la suspensión de la misma, como en los casos de probatoria, de abandono de menores o de personas con más de 60 años de edad.[2] Pero la regla general contra la suspensión de la ejecución de sentencias no es de aplicación aquí precisamente porque ésta no fué una "suspensión" en el sentido en que la palabra se usa en la regla general. Es decir, la sentencia de 4 meses no fué una sentencia única de por sí que no crearía problema alguno en relación con alguna otra sentencia, si se hubiera empezado a cumplir en seguida. Mas bien, a la ejecución inmediata de la sentencia de 4 meses se interponía una sentencia de 4 años por mutilación. Y la última podía ejecutarse en una de dos maneras: (1) "cumpliéndola" fuera de la prisión sometiéndose a los términos de la probatoria; (2) revocando la probatoria por no cumplir el acusado con sus condiciones y cumpliendo posteriormente la sentencia en presidio.

En aquellos casos en que se justifica la probatoria, el cumplimiento de la sentencia por el primer método es el objetivo primordial de nuestro estatuto sobre probatoria,

[1] El artículo 327 prescribe como sigue: "Cuando se haya dictado sentencia se entregará inmediatamente una copia certificada del original al oficial que tenga la obligación de ejecutarla, y no será necesaria ninguna otra orden ni autorización para justificar o pedir la ejecución."

El artículo 329 provee así: "Si la sentencia es a prisión, o al pago de una multa y prisión hasta que la multa sea satisfecha, el reo deberá ser confinado sin demora al cuidado del oficial correspondiente, y será detenido por éste hasta que la sentencia se haya cumplido."

[2] Ley núm. 259, Leyes de Puerto Rico, 1946; artículo 263, Código Penal, ed. 1937; Ley núm. 19, Leyes de Puerto Rico, 1914 (pág. 157).

Ley núm. 259 de 1946. Aquí eso fué logrado a cabalidad. Pero, con arreglo a derecho, el cumplimiento de la sentencia por el primer método fuera de la prisión equivalía a ejecutar la sentencia en igual forma que si se ejecutara la misma encarcelando al acusado por todo su término. *Korematsu* v. *United States*, 319 U. S. 432, 435; *Roberts* v. *United States*, 320 U. S. 264, 267; *Cooper* v. *United States*, 91 F.2d 195, 199 (C.C.A. 5, 1937).(3) En consecuencia, la sentencia probatoria de cuatro años era una que exigía su cumplimiento inmediato, bien en la penitenciaría o fuera de ella, dependiendo de la conducta del acusado. Bajo estas circunstancias, de acuerdo con la Ley núm. 108, Leyes de Puerto Rico, 1943, la corte de distrito estaba autorizada a imponer las sentencias consecutivas que aquí impuso; v. g., que la sentencia de cuatro meses se ejecutara después de cumplirse (bien dentro de la prisión o fuera de la misma en probatoria) la sentencia de cuatro años.(4)

El tribunal de distrito se confrontó con un difícil problema en este caso. La teoría de la probatoria es que ésta deberá concederse en aquellos casos en que está justificado el evitar encarcelación alguna. *United States* v. *Murray*, 275 U. S. 347. Esta teoría no podía lograrse total-

---

(3) En el caso de *Korematsu* la Corte Suprema citó con aprobación el de *Cooper*. En éste la ·corte dijo a la pág. 199 que la probatoria "es una manera autorizada de castigo tenue y ambulante, siendo su propósito disciplinar reformando. Aquél que está bajo probatoria no es un hombre libre, sino sujeto a vigilancia, y a aquellas condiciones que la corte pueda imponerle."

(4) La Ley núm. 108 derogó el artículo 31 del Código Penal, que permitía sentencias consecutivas solamente en aquellos casos en que se encontrara culpable al acusado por un segundo delito antes de haber sido sentenciado por el primero. Bajo la sección 2 de la Ley núm. 108, el juez sentenciador determina si los períodos de encarcelación serán consecutivos o concurrentes. La sección 3 dispone entre otras cosas que los términos no serán concurrentes "(c) Cuando los términos de prisión fueren impuestos para cumplirse en diferentes instituciones penales". La sección 5 dispone que cuando la corte sentenciadora guardare silencio sobre el particular, las sentencias serán cumplidas consecutivamente. *Cf.* *Ruiz* v. *Saldaña*, 58 D.P.R. 634, y *Pueblo* v. *Acevedo*, 60 D.P.R. 92, que fueron resueltos bajo el artículo 31 del Código Penal, el cual, como ya hemos visto, fué derogado por la Ley núm. 108.

mente en el presente caso porque la corte inferior carecía de autoridad para suspender la sentencia de cuatro meses. (⁵) Frente a este dilema, quizá hubiera sido más propio, desde el punto de vista de la rehabilitación, exigir que se cumpliera la sentencia ·de cuatro meses de cárcel, antes y no después de la sentencia probatoria. Pero la corte inferior tenía autoridad legal para disponer lo último según hizo en este caso. *Frad* v. *Kelly*, 302 U. S. 312; *Weber* v. *Squier*, 124 F.2d 618 (C.C.A. 9, 1941).

Como somos de opinión que la corte inferior tenía poder para suspender la ejecución de la sentencia de cuatro meses hasta después que se cumpliera el período probatorio de la sentencia de cuatro años, podríamos anular el auto sin ulterior discusión. Sin embargo, uno de los propósitos que tuvimos al expedir el auto fué determinar una segunda y quizá más importante cuestión; o sea, si una corte de distrito puede ordenar la ejecución de una sentencia varios años después de haberse ésta dictado pero suspendido ilegalmente. El Fiscal Auxiliar de este Tribunal, como hemos visto, admitió que la sentencia de cuatro meses fué suspendida ilegalmente y argumentó solamente esta segunda cuestión. Ambas partes han argumentado este punto y el Fiscal Auxiliar nos pide que reexaminemos y revoquemos el caso de *Pueblo* v. *Acosta*, 10 D.P.R. 306. Bajo todas las circunstancias, creemos de interés público resolver esta cuestión.

El sumario del caso de *Acosta* dice como sigue: "Un tribunal no tiene facultades para suspender el cumplimiento de una sentencia dictada en una causa criminal, o para dejarla sin efecto, mas si lo hiciere y permitiere que el prisionero

---

(⁵) Cuando impuso las sentencias en 1947, la corte inferior no tenía autoridad para concederle al acusado probatoria por la sentencia de cuatro meses, porque la Ley ·núm. 259 de 1946 solamente permitía la probatoria en ciertos casos graves (*felonies*). *Pueblo* v. *Tribunal de Distrito*, 66 D.P.R. 399. La Ley núm. 259, según fué enmendada por la núm. 177, Leyes de Puerto Rico, 1949 ((1) pág. 557), aún no autoriza la probatoria en casos *misdemeanor*. Esto es así aun cuando el caso *misdemeanor* surja, como aquí, de los mismos hechos por los cuales el acusado recibe otra sentencia por delito grave, la cual ha sido suspendida.

quede en libertad y salga de su custodia, la corte pierde entonces la jurisdicción que sobre él tenía y carece de poder para sentenciarlo nuevamente, o declarar subsistente la sentencia que antes revocara." Según indica la opinión concurrente del Juez MacLeary, se podría argüir que los hechos del caso de *Acosta* no exigían que la corte pasara sobre la cuestión resuelta por la mayoría de la corte. No obstante, con el fin de aclarar la ley en esta jurisdicción, supondremos que el caso de *Acosta* es una decisión más bien que un *dictum* sobre este punto.

El caso de *Acosta* es contrario a los casos que interpretan estatutos idénticos o similares a los nuestros. El abrumador peso de las autoridades es al efecto de que cuando se dicta una sentencia en un caso criminal, pero se dicta una orden nula suspendiendo la ejecución de la sentencia, el acusado puede ser requerido para que pague su multa suspendida o cumpla en presidio su período suspendido, no obstante la orden errónea suspendiendo la ejecución de la sentencia. El cumplimiento de la sentencia que ha sido suspendida sin autoridad alguna puede tener efecto en cualquier momento después de tal suspensión, aun después de haber expirado el término dentro del cual se dictó la orden nula. Además, la mayoría de los casos resuelve que el acusado puede ser requerido para que cumpla una sentencia de presidio, aun después de haber expirado el período que debió haber cumplido en prisión, ya que la sentencia de presidio se cumple, no por el transcurso del tiempo sino cumpliendo de hecho la sentencia en presidio, y para todo fin práctico el acusado está en la posición de aquél que se ha escapado de la prisión, durante el tiempo en que goza de libertad bajo la suspensión de la ejecución de una sentencia. Anotación, 141 A.L.R. 1225, 1229–31.[6]

---

[6] Al mismo efecto, *United States* v. *Hill*, 4 F. Supp. 748 (Dist. Ct., Pa., 1933); *Ex parte Claik*, 234 Pac. 109 (Cal., 1925); *In re Nottingham*, 268 Pac. 587 (Col., 1928); *Ex parte Jennings*, 267 Pac. 227 (Idaho, 1928); *Dawson* v. *Sisk*, 4 N.W.2d 272 (Iowa, 1942); *Burnstein* v. *Jennings*, 4 N.W.2d 428 (Iowa, 1942); *State* v. *Parks*, 36 N.E.2d

Las cortes que siguen la regla de la mayoría frecuentemente citan del caso de *Morgan* v. *Adams*, 226 Fed. 719, 720–21 (C.A. 8, 1915) que ". . . fuerza concluir que, si la orden suspendiendo tal sentencia es ilegal, lo es así no porque ésta sea irregular o técnicamente defectuosa sino porque está fuera de la autoridad de la corte y por consiguiente es nula, imperando la sentencia, siendo ésta ejecutable por la corte en cualquier momento después de dictada, ya sea antes o después del término de la corte, hasta que el convicto haya sufrido las penas impuéstasle. Aun cuando la orden de suspensión esté comprendida en la sentencia que impone la pena, sin embargo, la sentencia está autorizada y es válida, mientras que la orden de suspensión no está autorizada y es nula, y como la segunda es separable de la primera, aquélla cae mientras que la sentencia sigue en pie. 'Admítase', dice el Juez Young en *State ex rel. Buckley* v. *Drew*, 75 N. H. 402, 74 Atl. 875, 'que la corte carecía de autoridad para suspender las sentencias [de los acusados], y todavía quedará el hecho de que tenía poder para imponerlas; y, como las dos partes de la orden son separables y distintas, la ilegalidad de la última parte en forma alguna afectaría la validez de la primera parte.' "

Convenimos con las anteriores autoridades. Por tanto, el caso de *Pueblo* v. *Acosta,* supra, queda revocado. Aun bajo la suposición de que la suspensión de la ejecución de la sentencia de cuatro meses fuera ilegal, la corte inferior no solamente tenía facultad sino que venía obligada a ordenar su ejecución cuando se le llamara la atención hacia la ilegalidad de la suspensión de tal sentencia.

*El auto de hábeas corpus será anulado.*

---

42 (Ohio, 1941); *State* v. *Gore,* 29 S.E.2d 476 (W.Va., 1944); *Steadman* v. *State,* 37 S.2d 357 (Miss., 1948).

El caso de *Miller* v. *Aderhold,* 288 U. S. 206, también llegó al mismo resultado en la situación análoga en que se suspendió la imposición más bien que la ejecución de la sentencia. Y véase *Ex parte Martin,* 185 P.2d 645 (Cal., 1947).