EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* TEÓGE-NES RODRÍGUEZ PÉREZ, acusado y apelante.

Número 15376.

*Sometido:* 6 de mayo de 1953. *Resuelto:* 14 de abril de 1954.

*Jaime A. García Blanco,* abogado del apelante; *Hon. Secretario de Justicia, José Trías Monge, J. Rivera Barreras, Fiscal del Tribunal Supremo* y *Rafael L. Ydrach Yordán, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR NEGRÓN FERNÁNDEZ emitió la opinión del tribunal.

El 16 de agosto de 1950, luego de un juicio por tribunal de derecho, el apelante fué declarado convicto del infame crimen

contra natura. El tribunal señaló el 21 del propio mes para el pronunciamiento de la sentencia. En esa fecha, a solicitud del acusado, pospuso dicho acto para el día 28.[1]

El 6 de octubre de 1950, luego de la serie de posposiciones que a instancias del acusado decretó el tribunal—las que se enumeran en la nota (1)—solicitó el acusado que su caso se refiriera al Oficial Probatorio para que rindiera un informe a fin de que se determinara si podía o no él acogerse a los beneficios de la Ley de Sentencias Probatorias—Ley núm. 259 de 3 de abril de 1946, según enmendada por la núm. 177 de 4 de mayo de 1949.[2] Así lo dispuso el tribunal ordenando que tan pronto se rindiera dicho informe se diera cuenta con él para señalar fecha para dictar sentencia.

No fué hasta el 21 de agosto de 1951 que el tribunal a quo dictó sentencia finalmente, imponiendo al acusado una pena indeterminada de un año a un año y un mes de presidio.[3]

---

[1] En esta ocasión, a petición otra vez del acusado, el tribunal pospuso nuevamente dicho acto hasta el 4 de septiembre siguiente, en la cual fecha, de no haberse presentado la moción de nuevo juicio anunciada por la defensa, procedería con el pronunciamiento de la sentencia. Presentada dicha moción, se señaló para vista a celebrarse el 12 del propio mes, quedando en esa fecha sometida para resolución, siendo declarada sin lugar el día 22. Señalada nuevamente fecha, 29 de septiembre de 1950, para el acto de pronunciar sentencia, pidió otra vez el acusado la posposición del mismo, a lo que nuevamente accedió el tribunal, señalando el 6 de octubre siguiente para ello.

[2] El crimen contra natura quedó excluído expresamente de los beneficios de libertad a prueba por la enmienda de la Ley núm. 177 de 4 de mayo de 1949 ((1) pág. 557), vigente a la fecha de los hechos en este caso, 28 de octubre de 1949.

[3] En esa ocasión el juez sentenciador se expresó así:

". . . Practicada prueba por ambas partes, la Corte declaró al acusado culpable y convicto del delito contra natura. Posteriormente, el acusado, por conducto del Lcdo. García Blanco, radicó una moción de nuevo juicio la cual fué declarada sin lugar. Así las cosas, como la corte, tuvo conocimiento del Departamento de Justicia sobre una probable enmienda a la Ley Sobre Sentencias Suspendidas a los efectos de extender sus beneficios a los estudiantes convictos de esta clase de delitos, nos reservamos la lectura de la sentencia hasta el día de hoy en que procedemos a dictarla, después de no haberse aprobado la enmienda en cuestión.

"         .        .        .        .        .        .        .        .

"Los atenuantes que la corte ha tenido en consideración para la imposición de esta pena mínima son: la tierna edad del acusado; su 'status' de

En recurso de apelación establecido para ante este Tribunal, sostiene, el apelante, como único error, que el tribunal a quo actuó "sin jurisdicción y falto de autoridad legal" al sentenciarle once meses después de haberle hallado culpable del delito imputádole, y luego de "estar sometido durante el indicado lapso a un período probatorio".

■■ La afirmación del apelante de que del 6 de octubre de 1950, fecha en la que el tribunal sentenciador, a su solicitud, refirió el caso para estudio al Oficial Probatorio, hasta el 21 de agosto de 1951, fecha en que dictó sentencia, él estuvo sometido "a un período probatorio", así como la afirmación de dicho tribunal, al dictarla, de que le imponía una pena mínima al acusado por considerar, entre otros, como atenuante "el hecho de que prácticamente este acusado ha cumplido la pena impuéstale por la corte mediante el cumplimiento de un período probatorio administrativo que le fijó el entonces Procurador General" en lo que se lograba la aprobación de una enmienda a la Ley de Sentencias Probatorias, carecen de base legal. El tribunal, no obstante el laudable propósito que le llevó a acceder a la improcedente solicitud del acusado de que se refiriera su caso al Oficial Probatorio para que rindiera informe sobre si podía acogerse a los beneficios de dicha Ley, no tenía poder, bajo el estado de la legislación vigente, para conceder *status* probatorio alguno—judicial o administrativo—al acusado, mediante la suspensión del pronunciamiento de la sentencia, lo cual la referida ley en ningún caso autoriza, ni lo hubiera tenido para suspender sus efectos después de dictada, lo cual la ley en casos de esta naturaleza prohibe. Pero el apelante, que indujo a error al tribunal, no puede quejarse ahora de su propia actuación, ni aprovecharse de una

---

estudiante de escuela superior; evitar el menor contacto posible del convicto con criminales adultos y el hecho de que prácticamente este acusado ha cumplido la pena impuéstale por la corte mediante el cumplimiento de un período probatorio administrativo que le fijó el entonces Procurador General de Puerto Rico, Hon. Vicente Géigel Polanco, en lo que se lograba la aprobación de la enmienda a que hemos hecho referencia, lo cual hemos lamentado profundamente."

situación provocada por él mismo, la que, lejos de serle perjudicial, tendía a beneficiarle. *Cf. Padilla* v. *Pueblo*, 42 D.P.R. 913.

La orden del tribunal refiriendo el caso al Oficial Probatorio, con la consiguiente dilación en dictar sentencia durante el período indicado, no tiene las consecuencias jurídicas que le atribuye el apelante en el sentido de que al ser sentenciado finalmente, el tribunal actuó "sin jurisdicción y falto de autoridad legal."

Su argumento descansa en la teoría de que la tardanza de un tribunal en pronunciar sentencia le priva de jurisdicción o autoridad para dictarla a menos que exista justa causa para dicha dilación. Se apoya el apelante en las disposiciones de los artículos 309, 318 y 319 de nuestro Código de Enjuiciamiento Criminal, (4) en citas de jurisprudencia de varios estados de la Unión y en los casos de *El Pueblo* v. *Charón*, 7 D.P.R. 428 y *El Pueblo* v. *Acosta*, 10 D.P.R. 306. Sin embargo, los preceptos del Código, y las decisiones de este Tribunal que invoca el apelante, nada abonan a su contención de que el tribunal a quo carecía de jurisdicción o autoridad para sentenciarle, como y cuando lo hizo. El caso de *Acosta*, que envolvía una cuestión distinta a la aquí planteada, fué expresamente revocado por este Tribunal en *De Jesús* v. *Ra-*

---

(4) Artículo 309.—"Después de una confesión o veredicto de culpabilidad, o después de dado un veredicto contra el acusado, en un caso en que se alegare haber sido éste anteriormente declarado convicto o absuelto, si no se suspende la sentencia o se concede un nuevo juicio, el tribunal señalará día para dictar sentencia, que, en casos de *felony* (delito muy grave), será cuando menos dos días después del veredicto, si el tribunal se propone continuar en sesión, mientras tanto; pero si no fuese así, entonces será en fecha tan distante como pueda razonablemente fijarse."

Artículo 318.—"Cuando el acusado comparezca para oír la sentencia, debe ser informado por el tribunal o, bajo la dirección de éste, por el secretario, de la naturaleza del cargo que se le hace, así como de las alegaciones de su defensa y del veredicto, si hubiere recaído alguno, y debe preguntársele si tiene alguna causa legal para demostrar que no procede dictar sentencia contra él."

Artículo 319.—"Si no se alega, o no halla el tribunal causa suficiente para que no sea dictada la sentencia, debe ésta pronunciarse sin demora."

*mírez, Alcaide Cárcel*, 72 D.P.R. 297, 303. En el de Charón, que interpreta el artículo 309 del Código de Enjuiciamiento Criminal, y el que no envolvía actuación o conducta alguna del acusado por la que éste renunciara a que le fuera dictada sentencia en un caso *felony* dentro de un término razonable, este Tribunal expresó que la dilación en dictar sentencia, después del veredicto (en causa *felony*) no estuvo justificada, pero no encontró en ello motivo de revocación.

La teoría prevaleciente en esta jurisdicción es en el sentido de que cuando la conducta del acusado demuestra una renuncia a la dilación en imponerle sentencia, no puede sostenerse que el tribunal perdió su jurisdicción para dictarla no obstante haber transcurrido un término mayor que el razonable. *Pueblo* v. *Lebrón*, 61 D.P.R. 657. *Cf. Ramos* v. *Rivera*, 68 D.P.R. 548. Creemos, sin embargo, que la mejor regla es la federal, al efecto de que hasta que medie la imposición válida de una sentencia, el tribunal conserva su jurisdicción para dictarla, sin que pierda su autoridad para ello por haber recaído una orden nula suspendiendo la imposición de la misma. *Miller* v. *Aderhold*, 288 U. S. 206, 77 L. Ed. 702. Véanse además monografías en 97 A.L.R. 802, 3 A.L.R. 1003 y 33 L.R.A. (N.S.) 112. *Cf. Hodges* v. *United States*, 35 F.2d 594.

*No existiendo el error señalado, la sentencia será confirmada.*