JAMES C. HILL, Circuit Judge:
Plaintiff-appellant, Commercial Metals Company, appeals from the District Court’s dismissal of its amended complaint against defendant-appellee, Balfour, Guthrie & Company, Limited. We affirm.
The instant dispute arises out of three contracts between the parties, whereby plaintiff sold to the defendant a certain quantity of Korean steel of certain specifications. Each contract contained the following arbitration clause:
11. ARBITRATION: Any controversy arising under or in connection with the contract shall be submitted to arbitration in Dallas, Texas, in accordance with the rules of the American Arbitration Association; judgment on any award may be entered in any court having jurisdiction; the parties hereto submit to the jurisdiction of the Federal and State courts in Dallas, Texas, and notice of process in connection with the arbitral or judicial proceedings may be served upon the parties by registered or certified mail, with the same effect as if personally served.
After contracting with plaintiff, defendant Balfour, in turn, contracted to sell the Korean steel to one of its customers located in the State of Washington.
Upon delivery of the steel to Balfour’s customer, a dispute arose between Balfour and its customer as to whether or not the steel complied with the contract specifications. Balfour thereupon informed the plaintiff that a claim would be pursued if the steel was not in conformity with the contract.
On February 20,1976, the plaintiff, alleging diversity of citizenship, filed, in the District Court for the Northern District of Texas, a petition to compel defendant to submit its claim against plaintiff to arbitration.
Shortly thereafter, defendant filed suit in a Washington State Superior Court seeking damages against the plaintiff or the collection of its account from its customer.
*266 Shortly after filing its petition in the District Court, plaintiff became aware that diversity jurisdiction was lacking since both the plaintiff and defendant corporation had citizenship in Delaware. Plaintiff then amended its complaint.
In its amended complaint, plaintiff sought a declaratory judgment, pursuant to 28 U.S.C. § 2201, that the contractual arbitration provisions were valid and enforceable, as provided by Section 2 of the Federal Arbitration Act, 9 U.S.C. § 2, and that the Federal Arbitration Act superseded, by operation of the Supremacy Clause of the Constitution, any inconsistent Texas statutes concerning arbitration.
The defendant moved to dismiss the amended complaint on the ground that the District Court lacked subject matter jurisdiction over the dispute. The District Court granted defendant’s motion and dismissed the case without prejudice. In its memorandum opinion, the District Court correctly noted that the Declaratory Judgment Act grants to trial courts a measure of discretion in determining whether or not to entertain a suit for declaratory relief even though jurisdiction is present. Brillhart v. Excess Insurance Co., 316 U.S. 491, 494, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942); PPG Industries, Inc. v. Continental Oil Co., 478 F.2d 674, 680 n. 8 (5th Cir. 1973). The trial judge chose, in his discretion, to dismiss the complaint.
In exercising his discretion, the trial judge was influenced by a number of factors. Of principal importance to the trial judge was the question of whether or not the complaint alleged the existence of a federal question, thereby conferring jurisdiction upon the trial court. 28 U.S.C. § 1331.
The District Court expressed a grave doubt whether federal question jurisdiction was present. His doubt was well-justified. We hold that the District Court lacked subject matter jurisdiction over the complaint and affirm the District Court’s dismissal of the complaint.
We do not think plaintiff’s suit to compel arbitration is one arising under the laws, treaties or Constitution of the United States, as interpreted by Supreme Court and other authorities.
At common law, agreement in contracts to submit disputes arising therefrom to arbitration, for various reasons, were not specifically enforced by the courts. See Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 3569. Accordingly, in passing the United States Arbitration Act of 1925, Congress insured the survival of contractual arbitration clauses by declaring:
A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. 9 U.S.C. § 2.
In this light, it is seen that the effect of Section 2 of the Arbitration Act is simply to remove the previously viable defenses of the party opposing arbitration.
It must be emphasized that the question of whether or not a dispute arising out of a contract will be subject to the arbitration process is left solely to the agreement of the parties to the contract. If the contract does not so provide, then no federal law requires arbitration. If the agreement dejes provide for arbitration, then Section 2 of the Act removes the previous impediments to enforcement of the clause.
Thus, in seeking to compel arbitration, the plaintiff’s complaint does not rest upon Section 2 of the Act. Instead, the basis of the plaintiff’s complaint is the contractual agreement of the parties to arbitrate.
The landmark case of Gully v. First Nat. Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 *267 (1936), controls the disposition of the instant case. In Gully, the assets of the First National Bank of Meridian were conveyed to the First National Bank in Meridian, a new entity, under a contract whereby the debts and liabilities of the grantor were assumed by the grantee, which covenanted to pay them. Among the debts and liabilities so assumed were moneys owing to the State Collector of Taxes.
The new bank failed to pay the assessed taxes whereupon the Collector instituted suit in the state courts. The defendant bank sought removal of the case to the United States District Court.
The issue was whether or not the case fell within federal question jurisdiction. The bank argued and this Circuit held that a federal statute, 12 U.S.C. § 548, created the power of the state to tax the shares of national banks and that the tax collector by implication relied upon the federal statute in suing to collect the taxes. We held that federal question jurisdiction was present.
A unanimous Supreme Court, speaking through Mr. Justice Cardozo, disagreed and found jurisdiction to be absent. Declaring the general principle that “ ‘[a] suit to enforce a right which takes its origin in the laws of the United States is not necessarily, or for that reason alone, one arising under those laws, for a suit does not so arise unless it really and substantially involves a dispute or controversy respecting the validity, construction, or effect of such a law, upon the determination of which the result depends,’ ” 299 U.S. at 114, 57 S.Ct. at 98, quoting Shulthis v. McDougal, 225 U.S. 561, 569, 32 S.Ct. 704, 56 L.Ed. 1205 (1912) (citations omitted), Justice Cardozo applied the rule to “the case at hand.”
Viewing the case at hand against this background of established principle, we do not find in it the elements of federal jurisdiction.
1. The suit is built upon a contract which in point of obligation has its genesis in the law of Mississippi. A covenant for a valuable consideration to pay another’s debts is valid and enforceable without reference to a federal law. For all that the complaint informs us, the failure to make payment was owing to lack of funds or to a belief that a stranger to the contract had no standing as a suitor or to other objections non-federal in their nature. There is no necessary connection between the enforcement of such a contract according to its terms and the existence of a controversy arising under federal law.
2. The obligation of the contract being a creation of the state, the question remains whether the plaintiff counts upon a federal right in support of his claim that the contract has been broken. The performance owing by the defendant was payment of the valid debts, and taxes are not valid debts unless lawfully imposed. From this defendant argues that a federal controversy exists, the tax being laid upon a national bank or upon the shareholder therein, and for that reason being void unless permitted by the federal law.
Not every question of federal law emerging in a suit is proof that a federal law is the basis of the suit. The tax here in controversy if valid as a tax at all, was imposed under the authority of a statute of Mississippi. The federal law did not attempt to impose it or to confer upon the tax collector authority to sue for it. True, the tax, though assessed through the action of the state, must be consistent with the federal statute consenting, subject to restrictions, that such assessments may be made. R.S. § 5219, 12 U.S.C. § 548. It must also be consistent with the Constitution of the United States. McCulloch v. Maryland, 7 U.S. 316, 4 Wheat. 316, 4 L.Ed. 579; Owensboro National Bank v. Owensboro, 173 U.S. 664, [19 S.Ct. 537, 43 L.Ed. 850]; Baltimore National Bank v. Tax Commissioner, 297 U.S. 209, [56 S.Ct. 417, 80 L.Ed. 586], If there were no federal law permitting the taxation of shares in national banks, a suit to recover such a tax would not be one arising under the Constitution of the United States, though the bank would have the aid of the Constitution when it *268 came to its defense. Tennessee v. Union & Planters Bank, supra; Sawyer v. Ko-chersperger, 170 U.S. 303, [18 S.Ct. 946, 42 L.Ed. 1046]; Arkansas v. Kansas & Texas Coal Co., 183 U.S. 185, [22 S.Ct. 47, 46 L.Ed. 144]; Louisville & Nashville R. Co. v. Mottley, supra. That there is a federal law permitting such taxation does not change the basis of the suit, which is still the statute of the state, though the federal law is evidence to prove the statute valid.
The argument for the respondent proceeds on the assumption that, because permission at times is preliminary to action, the two are to be classed as one. But the assumption will not stand. A suit does not arise under a law renouncing a defense, though the result of the renunciation is an extension of the area of legislative power which will cause the suitor to prevail. Let us suppose an amendment of the Constitution by which the states are left at liberty to levy taxes on the income derived from federal securities, or to lay imposts and duties at their pleasure upon imports and exports. If such an amendment were adopted, a suit to recover taxes or duties imposed by the state law would not be one arising under the Constitution of the United States, though in the absence of the amendment the duty or the tax would fail. We recur to the test announced in Puerto Rico v. Russell & Co., supra: “The federal nature of the right to be established is decisive — not the source of the authority to establish it.” Here the right to be established is one created by the state. If that is so, it is unimportant that federal consent is the source of state authority. To reach the underlying law we do not travel back so far. By unimpeachable authority, a suit brought upon a state statute does not arise under an act of Congress or the Constitution of the United States because prohibited thereby. Louisville & Nashville R. Co. v. Mottley, supra. With no greater reason can it be said to arise thereunder because permitted thereby.
299 U.S. at 114 — 16, 57 S.Ct. at 98. (emphasis supplied).
In the instant case, the source of the alleged right to compel arbitration derives from the agreement of the parties, not from any federal law. The federal law, as in Gully, simply renounces a previously viable defense. As the Supreme Court observed, this is not sufficient to create federal question jurisdiction. We similarly hold federal question jurisdiction to be absent.
Indeed, this Court has long adhered to the principles announced in Gully. In Amalgamated Ass’n, Etc. v. Southern Bus Line, 189 F.2d 219 (5th Cir. 1951), the plaintiff union sought to compel the defendant bus company to submit a dispute arising out of an employment contract to arbitration. Diversity jurisdiction was lacking. The plaintiff asserted that the collective bargaining laws furnished federal question jurisdiction. This Court, applying Gully, found the dispute to arise out of the contract, not any federal law and dismissed the appeal for lack of jurisdiction. The same situation is presented by the case at bar.
There is an additional reason why federal question jurisdiction is lacking.
 An independent ground of jurisdiction is expressly required by statute in petitions seeking declaratory judgments. 28 U.S.C. § 2201. Similarly, it is expressly required that petitions to compel arbitration, brought pursuant to Section 4 of the Arbitration Act, 9 U.S.C. § 4, allege an independent ground of jurisdiction.
The plaintiff argues that Section 2 of the Act is a federal law which furnishes an independent basis of jurisdiction. The plaintiff argues that Section 2 may be construed to be independent of Section 4 of the Arbitration Act and that the District Court may utilize the “further relief” provision of the Declaratory Judgment Act, Section 2202, to compel arbitration if not voluntarily utilized following the declaration that arbitration is required. We disagree.
The Arbitration Act was enacted as a single, comprehensive statutory scheme. Bernhardt v. Polygraphic Co., 350 U.S. 198, 201, 76 S.Ct. 273, 100 L.Ed. 199 (1956); *269 Robert Lawrence Company v. Devonshire Fabrics, Inc., 271 F.2d 402 (2d Cir. 1959); Bangor and Aroostock R. Co. v. Main Central R. Co., 359 F.Supp. 261 (D.D.C.1973). To engage in the reasoning the plaintiff suggests would in effect repeal Section 4 of the Act. Any plaintiff by bringing suit under the guise of the Declaratory Judgment Act could achieve indirectly what the statute unequivocally prohibits directly. The Declaratory Judgment Act, furthermore, was not intended to be used as a contrivance to create jurisdiction which does not otherwise exist. Skelly Oil Co. v. Phillips Co., 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950); Shell Oil Co. v. Frusetta, 290 F.2d 689 (9th Cir. 1961).
It is clear that the state courts are entirely able, as well as required, to apply the United States Arbitration Act and compel arbitration pursuant to the Act if the statutory requisites are present. Coastal States Gas Producing Co. v. Producing Properties, 203 F.Supp. 956 (S.D.Tex.1962). Indeed, at the request of the parties, we allowed the parties to communicate to the Court, after oral argument, in regard to ongoing state proceedings in which an order compelling arbitration has been sought. It appears to us that the state court is conscientiously fulfilling its duty in deciding the applicability of the Federal Arbitration Act, although, of course, we are not at liberty to speculate as to the correctness of such a determination. We refuse to allow every arbitration agreement concerning a maritime transaction or one involving interstate and foreign commerce to come within the jurisdiction of our district courts through an indirect method that was directly prohibited by Congress. We join the other courts which have considered the matter, and have required an independent jurisdictional basis, Robert Lawrence Company v. Devonshire Fabrics, Inc., supra; Amalgamated Ass’n, Etc. v. Southern Busline, supra; Warren Bros. Co. v. Community Bldg. C. of Atl., Inc., 386 F.Supp. 656 (M.D.N.C.1974); C. P. Robinson Const. Co. v. National Corp. for Hous. Part., 375 F.Supp. 446 (M.D.N.C. 1974); Bangor and Aroostock R. Co. v. Maine Central R. Co., supra; Coastal States Gas Producing Co. v. Producing Properties, supra, and have refused to fragment the Arbitration Act. Robert Lawrence Company v. Devonshire Fabrics, Inc., supra; Bangor and Aroostock R. Co. v. Maine Central R. Co., supra; Coastal States Gas Producing Co. v. Producing Properties, supra.
The plaintiff’s amended complaint failed to allege the existence of federal question jurisdiction. The District Court’s dismissal of the amended complaint is
AFFIRMED.