UNITED STATES of America, Plaintiff–Appellee,

v.

Kenneth L. THOMAS, Defendant–Appellant.

No. 90–3053.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 15, 1991.

Decided May 30, 1991.

Luis F. Sanchez, Asst. U.S. Atty., Robert L. Michels, Chicago, Ill., for plaintiff-appellee.

Carl M. Walsh, Chicago, Ill., Andrew B. Spiegel, Wheaton, Ill., for defendant-appellant.

Before WOOD, Jr., and KANNE, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

After serving a period of incarceration for his violations of the income tax laws, defendant Kenneth Thomas began to serve a five-year term of probation.[1] As spelled out by the sentencing order, that term was contingent upon compliance with a number of conditions. Thomas, however, appeared unwilling to comply with these conditions, and this attitude prompted the probation office to request a status hearing before the district court.

At that hearing, on September 22, 1989, the government filed a motion to revoke

---

1. For a more detailed exposition of the facts surrounding Thomas's 1985 convictions, *see United States v. Thomas*, 788 F.2d 1250 (7th Cir.), *cert. denied*, 479 U.S. 853, 107 S.Ct. 187, 93 L.Ed.2d 121 (1986), in which this court reversed three of Thomas's seven convictions and re- manded for resentencing on the remaining four. The district court imposed a five-year term of probation on one of the surviving convictions, and Thomas's compliance with that sentence is at issue on this appeal.

Thomas's probation. Attached to the motion was a special report by Thomas's probation officer, Joseph Tylenda, which asserted that Thomas had violated three conditions of his probation; he had failed to submit monthly reports to the probation office, had failed to work regularly at a lawful occupation, and had failed to make payments on a $10,000 fine. On September 12, 1990, the district court conducted a hearing on the government's motion.[2]

To support its request for revocation, the government submitted Tylenda's report and also produced a witness. Dave Harper, another probation officer, testified about the preparation, maintenance, and interpretation of special reports prepared by the probation office and also applied that background knowledge to Tylenda's report. Thomas, who was represented by counsel, was then permitted to cross-examine Harper. Thomas was also given the opportunity to present evidence and was apprised of his right to testify. He chose not to testify, however, and did not otherwise avail himself of the opportunity to present a defense or to offer any mitigating circumstances.

After arguments by counsel, the district court found that Thomas had violated the conditions of his probation by failing to submit monthly reports and by failing to work regularly at a lawful occupation.[3] The district court then announced, "I am going to reject the Government's motion to revoke probation, but on this violation, I am ordering that the defendant will serve 30 days [of jail time] ..., and upon his release, he will continue on probation until its termination date...." Hearing Transcript at 24. The district court thereafter entered the following minute order:

**2.** Although the timeliness of the hearing has not been challenged, the record suggests that the one-year delay can be attributed in large part to continuances requested by either Thomas or one of his attorneys.

**3.** As to the government's charge that Thomas was not making payments on his fine, the district court concluded that the government established neither that Thomas was capable of making payments on his fine nor that he wilfully refused to make payments. The district court

Hearing on rule to show cause why probation should be revoked. Evidence heard. The government's motion to revoke porbation [sic] is denied. However, the court finds that the defendant has violated conditions (three and six) of his probation and orders that defendant's probation be modified as follows: IT IS [H]EREBY ORDERED that the defendant shall serve thirty (30) days in custody and upon release from custody, defendant shall remain on probation....

On appeal, Thomas takes issue with both prongs of his restructured sentence. He first contends that the district court exceeded its authority by "modifying" his probation to include a term of incarceration. Thomas concedes that the district court had authority under 18 U.S.C. § 3653[4] to *revoke* his probation and thereafter to impose a split sentence. Under his reading, however, the district court refused to revoke his probation and, thereafter, *modified* it to include a period of incarceration. This action, Thomas argues, was impermissible because "[p]robation must be revoked before any sentence depriving [him] of his liberty may be imposed." Thomas also contends that he had an absolute right to reject continued probation. Neither of these contentions requires reversal.

Thomas's initial argument hinges upon our willingness to read the third sentence of the district court's order as an absolute refusal to revoke probation. By its terms, however, the third sentence merely denies a motion to revoke probation; it does not reject the possibility that revocation may nevertheless be appropriate. This observation is relevant, moreover, because a motion to revoke probation is oftentimes of-

therefore rejected the government's assertion that Thomas's failure to pay constituted a violation of his probation conditions.

**4.** Section 3653 was repealed by the Sentencing Reform Act but remains applicable to Thomas's offenses, which were committed prior to November 1, 1987. *See* Pub.L. No. 98–473, § 235, *reprinted in* 18 U.S.C. § 3551 historical note; *see also United States v. Holland,* 874 F.2d 1470, 1472 n. 1 (11th Cir.1989).

fered and interpreted as a request that the defendant be taken into custody and confined in jail for the remainder of his or her sentence. And indeed, the government took exactly this position before the district court. The government did not ask the district court to revoke probation and impose a split sentence; it asked the district court to convert Thomas's term of probation into a pure term of incarceration. Hearing Transcript at 18.

When viewed against this backdrop, the district court's order cannot be read in the manner suggested by Thomas. The district court's refusal to grant the government's motion appears to us as nothing more than a refusal to replace probation with a pure term of incarceration; the district court was merely indicating that it did not share the government's view as to how to address Thomas's behavior. That response left open the possibility that probation could be revoked and replaced with a split sentence, and it is this course that was ultimately taken.[5] While in hindsight the district court could have worded its order in a manner that more clearly expressed this intention, that failure does not constitute reversible error.

Even if Thomas were correct in his interpretation of the district court's order, and even if the district court's "modification" were impermissible, Thomas's argument for reversal would still fail. Under longstanding doctrine, an appellate court may affirm on any ground that finds support in the record. *See, e.g., Helvering v. Gowran*, 302 U.S. 238, 245, 58 S.Ct. 154, 157, 82 L.Ed. 224 (1937) (Brandeis, J.); *DeBruyne v. Equitable Life Assur. Soc'y*, 920 F.2d 457, 464 n. 10 (7th Cir.1990) (citing *Dairyland Financial Corp. v. Federal Intermediate Credit Bank*, 852 F.2d 242, 244 (7th Cir.1988)). Here, the government requested a probation revocation hearing and Thomas received a hearing with all of the procedural attributes specified in rule 32.1 of the Federal Rules of Criminal Procedure. *See* FED.R.CRIM.P. 32.1(a)(2) (outlining procedural requirements for probation revocation hearings). After the government presented its evidence and Thomas presented no evidence whatsoever, the district court found that he had violated the conditions of his probation. Thomas has never claimed that this finding, if valid, would not allow the district court to revoke his probation. He also concedes that the district court, upon revocation, had the authority to impose a split sentence such as the one that he received.[6] Accordingly, even if the district court did not actually revoke Thomas's probation before imposing a split sentence, this court could modify the district court's order to achieve that result and then affirm the order as modified.[7]

As to Thomas's assertion that he had an absolute right to reject the probation element of his restructured sentence, it would appear that this court has never directly addressed the question. An argu-

---

**5.** Thomas has never argued that the district court was required to state affirmatively that it was revoking his probation, and we therefore find it unnecessary to address that issue.

**6.** The plain wording of the statute also supports this conclusion. *See* 18 U.S.C. § 3653 (district court "may revoke the probation and require [the defendant] to serve the sentence imposed, or any lesser sentence, and, if imposition of sentence was suspended, may impose any sentence which might originally have been imposed"); *see also id.* § 3651 (imposing six-month maximum period of confinement on split sentence). As a side note, moreover, it appears that Thomas's restructured sentence was in line with the recommendations of both the American Law Institute and the American Bar Association. Both of these organizations advise against revoking probation and imposing a sentence of total confinement unless: (1) the defendant has been convicted of another crime; (2) the defendant's conduct indicates that he or she is likely to commit another crime unless imprisoned; or (3) such a sentence is essential to vindicate the authority of the court. MODEL PENAL CODE § 301.3(2) (1985) (promulgated by American Law Institute); STANDARDS FOR CRIMINAL JUSTICE § 18–7.3(c) (1980) (promulgated by American Bar Association).

**7.** Thomas suggests that this court should interpret the district court's order as converting the remainder of his term of probation, which was originally scheduled to end in December 1993, into a thirty-day term of incarceration. The record, however, in no way supports this interpretation; the district court clearly intended to impose a sentence greater than a thirty-day period of incarceration.

ment similar to Thomas's was raised in *United States v. Atlantic Richfield Co.,* 465 F.2d 58, 59 (7th Cir.1972), but was ultimately left unresolved. Since that time we have twice quoted the following language from *United States v. Mitsubishi Int'l Corp.,* 677 F.2d 785, 788 (9th Cir. 1982): "A defendant generally may reject probation and elect to have a sentence imposed." *See United States v. Warner,* 830 F.2d 651, 657 (7th Cir.1987); *United States v. Alexander,* 743 F.2d 472, 479 (7th Cir. 1984). *Warner* and *Alexander,* however, merely mentioned the quote from *Mitsubishi* in passing; they were not actually addressing the issue now before this court.

*Mitsubishi* itself offers no real reasoning (it does cite cases but they do not prove helpful, *see infra* note 9), and the other federal appellate courts offer little more in the way of useful guidance. In *Cooper v. United States,* 91 F.2d 195, 199 (5th Cir. 1937), a panel of the Fifth Circuit addressed a probationer's contention that "probation, like pardon, may be refused by the convicted person" and rejected it with the observation that the predecessor of section 3653 "vest[ed] a discretion in the Court, not a choice in the convict." [8] *Cooper* was a 1937 decision, but a more recent Fifth Circuit opinion has reaffirmed that holding. *See United States v. Howard,* 577 F.2d 269, 271 (5th Cir.1978) ("defendant

has no right to refuse probation and demand an immediate sentence").[9]

The Fifth Circuit's position is not without logic. It is the district court, not the defendant, who is given the task of determining the sentence for a crime. "[W]hen satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby," the district court may suspend a term of incarceration and place the defendant on probation "for such period and upon such terms and conditions *as the court deems best.*" 18 U.S.C. § 3651 (emphasis added). This scheme makes eminent sense when one recalls that a defendant is normally quite biased regarding the manner in which he or she should be sentenced.

Thomas's claimed right also raises problems of consistency. Presumably all defendants would prefer one form of sentence over another. Some defendants, for example, might prefer a fine over either incarceration or probation. Other defendants, in fact most, find incarceration more onerous than its alternatives. These defendants have no recourse based on their personal preference, yet Thomas would have us hold that defendants receiving a term of probation have an absolute and unchallengeable right to reject it. He has not attempted, however, to offer any justification for this seemingly arbitrary distinction between defendants.[10]

---

**8.** *Cf. Esquivel v. United States,* 414 F.2d 607, 608 (10th Cir.1969) (rejecting defendant's ability to reject parole).

**9.** In *United States v. Smith,* 414 F.2d 630, 636 (5th Cir.1969) (cited in *Mitsubishi*), *rev'd on other grounds sub nom. Schacht v. United States,* 398 U.S. 58, 90 S.Ct. 1555, 26 L.Ed.2d 44 (1970), the Fifth Circuit noted that the defendant "could have rejected probation and elected prison." That court was not addressing Thomas's argument, however (the defendant accepted probation), and, in any event, *Cooper* and *Howard* cast doubt on the opinion's precedential value.

Other federal appellate court opinions are arguably relevant to our discussion but are ultimately unhelpful. *See, e.g., United States v. Interstate Cigar Co.,* 801 F.2d 555, 557–58 (1st Cir.1986) (finding it unnecessary to address issue); *Barnhill v. United States,* 279 F.2d 105 (5th Cir.) (district court permitted defendant to choose between probation and another form of sentence), *cert. denied,* 364 U.S. 824, 81 S.Ct. 60,

5 L.Ed.2d 53 (1960); *Schwab v. Coleman,* 145 F.2d 672, 678 (4th Cir.1944) (cited in *Mitsubishi*) (court justifies defendant's right to reject probation on belief, since rejected, that probation orders were not final orders for purposes of appellate review). We would also note that a number of state legislatures and state courts have addressed the issue raised by Thomas, with mixed results. N. COHEN & J. GOBERT, THE LAW OF PROBATION AND PAROLE § 5.07, at 205 & nn. 131–33 (1983 & Supp.1990) (collecting statutes and cases); Annotation, *Right of Convicted Defendant to Refuse Probation,* 28 A.L.R.4th 736 (1984 & Supp.1990) (collecting cases).

**10.** One could argue, of course, that probation is unlikely to fulfill its rehabilitative purpose if the probationer does not consent to the conditions of probation. As one treatise has noted, however, this argument has several shortcomings:

First, all citizens are regularly required to obey laws which they neither explicitly approved nor drafted. It is not unfair to expect

Indeed, beyond pointing to the broad statements of principle in *Atlantic Richfield, Mitsubishi,* and *Alexander,* Thomas offers no justification whatsoever for his perceived right. Our own review of the case law disclosed only one viable candidate: a defendant's power to refuse probation acts as a check on the wide discretion of the district court in setting the conditions of probation. *See, e.g., People v. Frank,* 94 Cal.App.2d 740, 211 P.2d 350 (1949). There are already in place, however, what appear to be adequate checks on the district court's power: appellate review and legislative enactment. Appellate courts review the district court's decision for abuse of discretion and, as a general rule, will allow a defendant to challenge a condition of probation on constitutional, statutory, or even public policy grounds. *See generally* W. LaFave & J. Israel, Criminal Procedure §§ 25.3(c), (d), at 144–52 (1984 & Supp.1991). That review is admittedly deferential but nevertheless appears capable of identifying and correcting abuses. Probation, moreover, is a creature of the legislature, *Affronti v. United States,* 350 U.S. 79, 83, 76 S.Ct. 171, 100 L.Ed. 62 (1955), and Congress is free to impose limitations on the district court's discretion. Given these two restraints on a district court's ability to dictate the conditions of probation, it is by no means clear why a defendant should be allowed to exercise an additional, and unfettered, check on the district court's authority.

■ Even if we were to conclude that a defendant had a right to reject probation, that right would be qualified, not absolute. Society, after all, may sometimes have an interest in probation even when a defendant would prefer a prison sentence, and that interest must be balanced against a defendant's interest in avoiding probation.

*See* W. LaFave & J. Israel, *supra,* § 25.3(b), at 144 (suggesting balancing test). Thomas, however, has never suggested that his desire to reject probation would survive a balancing test, nor would the record support such an argument.

The district court required Thomas to comply with the general conditions of probation, pay all fines and penalties, cooperate with the Internal Revenue Service, and file all delinquent income tax returns. It would be futile for Thomas to argue that the general conditions of probation (such as filing monthly reports with the probation office) make it too onerous, and he would have a duty to pay the fines and penalties regardless of whether he was on probation. The remaining conditions, at their essence, require compliance with the tax laws. Thomas, a tax protester, may find these laws objectionable, but he would have an obligation to obey them regardless of whether he was on probation; obligations that would fall on an average citizen cannot provide a basis for a defendant's right to reject probation. And in contrast to Thomas's inability to establish that his probation is more onerous than its alternatives, it is beyond cavil that society's interest in seeing Thomas comply with the income tax laws would suffer if he were allowed to reject probation. Accordingly, Thomas would likely lose under any balancing test that this court might eventually decide to adopt.

■ Thomas does not stop, however, with a challenge to the form of his restructured sentence; he also challenges the district court's basis for concluding that he violated the conditions of his probation. This argument attacks primarily the district court's failure to sustain his objections to Harper's testimony. Harper was not the probation officer assigned to Thomas nor

the probationer ... to do the same. Indeed, the offender's capacity to follow certain rules (such as criminal laws) set by others may be an important step toward rehabilitation. Second, many probation ... rules encourage rehabilitation and, at the same time, protect the public from future harm. Thus, an offender convicted of larceny, which was committed to support a drug habit, may be ordered to undergo periodic blood tests to determine the presence of drugs. The public's strong interest in the probationer's ... drug-free existence may well justify the condition, irrespective of the offender's preferences. Third, at least some offenders' rehabilitation may be furthered by probation ... conditions to which the offender has not consented. In the hypothetical situation described above, for example, the periodic blood tests could deter the use of drugs.

did he have any independent information about Thomas. Harper's testimony, therefore, is portrayed as too unreliable to be admitted and his references to Tylenda's report are dismissed as double hearsay.

In challenging the district court's factual findings, Thomas bears an extremely heavy burden. Probation revocation hearings are not criminal prosecutions and, for the most part, are far less formal in nature. Except for the rules of privilege, the Federal Rules of Evidence do not apply; hearsay is therefore admissible. *See* FED.R.EVID. 1101(d)(3). The standard of proof is also more relaxed; "[t]he court need only be 'reasonably satisfied' [that the conduct of the probationer has not been as good as required by the conditions of probation] and need not find by a preponderance of the evidence that a violation has occurred." *United States v. Torrez–Flores*, 624 F.2d 776, 780–81, 782 (7th Cir.1980) (citing *United States v. Smith*, 571 F.2d 370, 372 (7th Cir.1978)); *see also Warner*, 830 F.2d at 655 ("A district court requires little evidence to find that a probationer has violated his probation conditions.").

Thomas's challenge falls far short of the mark necessary to obtain a reversal of the district court's findings. He suggests that the only evidence at his hearing came in the form of double hearsay—Harper's testimony about Tylenda's special report—but then offers no basis for concluding that Harper's testimony was inaccurate and, more importantly, ignores the fact that Tylenda's special report was also before the district court.[11] Tylenda's report was of the type that generally carries a presumption of reliability[12] and the district court stated that it had reviewed the report "many times." Thomas also misperceives the purpose of Harper's testimony, which

was primarily to acquaint the district court with the type of report that Tylenda had filed. Accordingly, we see no basis for upsetting the district court's factual findings.

■ Last, Thomas argues that this court should reexamine his 1986 sentence and correct the alleged errors therein. It is true that a defendant may attempt to correct an erroneous sentence on direct appeal or in a habeas corpus proceeding, *see Bozza v. United States*, 330 U.S. 160, 166, 67 S.Ct. 645, 648, 91 L.Ed. 818 (1947), but a probation revocation hearing does not fall within either of those categories. The relaxed nature of the hearing, moreover, makes it less suitable for addressing the issues that Thomas raises. *See Torrez–Flores*, 624 F.2d at 780–81 (quoting *United States v. Francischine*, 512 F.2d 827, 829 (5th Cir.), *cert. denied*, 423 U.S. 931, 96 S.Ct. 284, 46 L.Ed.2d 261 (1975)). This court has already held that a revocation hearing is not the appropriate forum in which to make a collateral attack on an underlying conviction, *id.* at 781, and Thomas has offered no persuasive explanation why the reasoning in *Torrez–Flores* should not bar his challenges to his underlying sentence.

We need not resolve this issue, however, because a more fundamental flaw besets Thomas's challenges; he failed to raise them in time for consideration at his hearing. On September 11, 1990, almost one year after the government had filed its motion, nearly six months after the briefing schedule should have been closed, and only one day before the scheduled probation revocation hearing, Thomas filed a petition under 28 U.S.C. § 2255 in which he

N. COHEN & J. GOBERT, *supra*, § 5.07, at 204.

**11.** *See Gagnon v. Scarpelli*, 411 U.S. 778, 782 n. 5, 93 S.Ct. 1756, 1760 n. 5, 36 L.Ed.2d 656 (1973) (Court does not "intend to prohibit use where appropriate of the conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence").

**12.** *Cf. United States v. Verbeke*, 853 F.2d 537, 539 (7th Cir.1988) (investigative report prepared by staff members of treatment center where defendant resided during probation constitutes

sufficiently reliable evidence for making determination that defendant violated probation) (citing *United States v. McCallum*, 677 F.2d 1024 (4th Cir.), *cert. denied*, 459 U.S. 1010, 103 S.Ct. 365, 74 L.Ed.2d 400 (1982)); *United States v. Simmons*, 812 F.2d 561, 564 (9th Cir.1987). In any event, Thomas had almost one year in which to investigate the allegations contained in Tylenda's report. He has never challenged the reliability of the report, however, and by that omission has waived the right to make that challenge at this point.

challenged his 1986 sentence.[13] The next day (when appearing before the district court for the revocation hearing) Thomas alluded to his petition, which the district court had not yet received and to which the government had no opportunity to respond. In summarizing the issues raised in that petition, Thomas's counsel candidly acknowledged, "I'm not going to argue that motion today because that's not appropriate today." Hearing Transcript at 18–19. Under the circumstances, the district court had ample justification for postponing consideration of Thomas's eleventh-hour submission, and it should come as no surprise that we follow the district court's lead. *See Torrez–Flores*, 624 F.2d at 781 n. 3.

For the aforementioned reasons, the order of the district court is hereby

AFFIRMED.

---

**13.** Thomas did not take a direct appeal from that decision.