**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Cuba E. HOPSON, Defendant–Appellant.**

No. 93–3817.

United States Court of Appeals,
Seventh Circuit.

Argued May 10, 1994.

Decided Nov. 9, 1994.

---

Barry Rand Elden, Asst. U.S. Atty., Christopher Cook (argued), Criminal Receiving, Appellate Div., Chicago, IL, for U.S.

Leonard C. Goodman (argued), Marc W. Martin, Genson, Steinback, Gillespie & Martin, Anthony M. Petrone, Chicago, IL, for defendant-appellant.

Before MESKILL,* COFFEY, and RIPPLE, Circuit Judges.

COFFEY, Circuit Judge.

Defendant Hopson challenges the revocation of his probation, and the imposition of a ten-year prison term. We affirm the defendant's revocation of probation, but remand for clarification as to the length of his prison sentence.

## I. BACKGROUND

On May 12, 1988, the defendant, Hopson, was arrested by the Federal Bureau of Investigation ("FBI" or the "Bureau") and charged with two counts of transporting stolen trucks in violation of 18 U.S.C. § 2312 and one count of theft of goods from interstate commerce in violation of 18 U.S.C. § 659. At the time of his arrest, Hopson was serving a four-year state sentence for possessing and receiving stolen motor vehicles and parts.[1] The defendant entered into a plea bargain with federal prosecutors and pleaded guilty to the three counts charged. In exchange for the government's recommendation of the minimum sentence, Hopson agreed to cooperate with the Bureau in investigations pending against other defendants involved in the same scheme.

On June 22, 1988, the district court sentenced Hopson to one year's incarceration for Count I (transporting stolen vehicle across state lines), consecutively to the state prison sentence Hopson was already serving. For Counts II and III the federal court ordered the defendant to serve two five-year terms of probation to run concurrently with each other and consecutive to the one-year prison term imposed for Count I. As a condition of Hopson's probation, the court ordered the usual limitations on a probationer's conduct and in addition thereto ordered Hopson to file past due tax returns for the years 1982 through 1987, and to reimburse the FBI for the total amount of money he and his co-conspirators received from the undercover agents for stolen vehicles during the investigation. Before returning Hopson to state custody to fulfill the remainder of his four-year state sentence, the sentencing judge admonished him as follows:

However, I can tell you—in fact, I can promise you that if in that five-year period of probation you engage in any conduct of this nature [dealing in stolen vehicles] or any other criminal conduct, you can anticipate a revocation of probation and five more years in federal custody.

The defendant failed to heed the judge's warning. After his release from prison, Hopson returned to his life of crime, resuming his "chop shop" operation, dealing once again in stolen vehicles and parts. After receiving information regarding the sale of stolen construction equipment in April of 1992, the Bureau began an investigation of the defendant's activities and placed him and his associates under surveillance. During their investigation, the federal agents learned that Hopson operated a garage and storage yard located at 8928 South Holland Road, Chicago, Illinois (the "8928 yard") which was

* The Honorable Thomas J. Meskill, Circuit Judge of the United States Court of Appeals for the Second Circuit, sitting by designation.

1. Before being taken into federal custody, Hopson had been arrested eight other times, and had been convicted after five of those arrests, for crimes of theft and resale of stolen vehicles and parts.

used as a "chop shop" mainly for stolen trucks, heavy equipment and parts.[2]

Pursuant to a search warrant issued on August 24, 1993 for the 8928 yard, federal agents conducted a search of the yard on August 25, 1993. The agents testified that they found several stolen vehicles as well as stolen vehicle parts. The parts were traced by using matching serial numbers against records of stolen vehicles kept by the National Insurance Crime Bureau ("NICB"). These parts included a bumper from a stolen truck with its license plate still attached, identification tags from a stolen Mack truck, the rear axles from another stolen Mack truck, an Illinois license plate from a stolen van, and a stolen flatbed trailer. The Bureau agents surmised that other vehicles in the lot, other than those specifically identified in the first search warrant, were also stolen. In addition, the agents uncovered a collateral list[3] linking Hopson to the ownership of the yard and the operation of Kiwi Cartage, a trucking company listed at the same address as the yard. The FBI also seized a sawed-off shotgun in the house trailer used by the defendant as an office. Based on their observations, the FBI agents secured a second search warrant on August 27, 1993, and executed the warrant that day. At the time of the execution of the second search warrant, the agents noted that some of the stolen vehicles previously observed on the premises had been removed, including a stolen Mack truck and a flatbed trailer. With the new warrant, the FBI examined two dump trucks located behind the defendant's garage. Both trailers had had their paint removed, probably with sand-blasting equipment, and had rusted. The NICB records reflected that both trailers had been removed without the

owner's consent from a construction company in Cincinnati, Ohio.

During a number of interviews conducted before and after the two searches, Hopson offered to cooperate with the federal authorities. He volunteered his services as an informant against his co-conspirators as well as agreeing to assist in the recovery of the stolen property. The federal agents directed Hopson not to dispose of any more of the stolen property presently in the yard. When questioned during the interviews the defendant never claimed that he lacked knowledge of the illegal activity at the 8928 yard.

On September 16, 1993, the government filed a motion for a rule to show cause why the defendant's probation should not be revoked. The government alleged eight violations of Hopson's probation, and following a hearing, the court found that the defendant was guilty of six out of the eight violations listed in the violation document filed with the court.[4]

*Evidence concerning Hopson's ownership and control of the property located at 8928 South Holland Road in Chicago, Illinois*

At Hopson's probation revocation hearing, the government argued that the defendant maintained ownership and control of the property located at 8928 South Holland Road in Chicago, Illinois. Records obtained from LaSalle National Trust reflected that the property located at 8928 South Holland Road was held in a land trust, and the defendant-appellant Hopson was listed as the beneficiary of that trust. Bureau agent Miller testified that a sign at the 8928 yard read "H & M Trucking." Hopson claimed ownership of

---

**2.** 18 U.S.C. § 2322(b) defines "chop shop" as: "any building, lot, facility, or other structure or premise where one or more persons engage in receiving, concealing, destroying, disassembling, dismantling, reassembling, or storing any passenger motor vehicle or passenger motor vehicle part which has been unlawfully obtained in order to alter, counterfeit, deface, destroy, disguise, falsify, forge, obliterate, or remove the identity, including the vehicle identification number or derivative thereof, of such vehicle or vehicle part and to distribute, sell, or dispose of such vehicle or vehicle part in interstate or foreign commerce."

**3.** The collateral list referred to herein is a document describing the real property owned by an individual or corporation, and used as part of an application for a loan. The list sets forth several parcels of real estate owned by the defendant, including the 8928 yard.

**4.** Specifically, the district court found that the defendant had committed Violations 1, 2, 3, 5, 6, and 8. The government on its own motion withdrew Violation 4. The court was uncertain as to whether the evidence available would be sufficient to establish a violation of 18 U.S.C. § 2321.

H & M Trucking during his 1988 plea bargain and his subsequent meetings with his probation officer. Agent Miller later testified that the telephone number for the 8928 yard was listed to Kiwi Cartage and Marveo Hopson, the defendant's son. Kiwi Cartage was the name of the business operating out of the yard at the time of the 1993 searches. In light of this evidence the sentencing judge found "[t]hat the basic issue that runs through most of these violations has been established, that is, the shop at 8928 South Holland [Road] was, at all material times, in the possession, custody, and control of Mr. Hopson." The court went on to consider each of the violations individually.

*Violation One*

The government alleged that on August 18, 1993 Hopson possessed a stolen 26–foot Belshe utility trailer, and further that the vehicle identification number ("VIN") plate had been removed from the truck.

FBI surveillance established that the flatbed trailer had been located in the defendant's yard, was driven to Calumet City, Indiana, and left in a parking lot. The federal agents conducting the surveillance observed the defendant driving a pick-up truck following the tractor-trailer truck from the 8928 yard to its drop-off point in Calumet City. Examination of the trailer reflected that all of its VIN plates had been removed. Possession of a motor vehicle without identification (VIN) tags with intent to sell or attempt to otherwise dispose of it is a violation of federal law. 18 U.S.C. § 2321.[5]

Hopson denied operating the pick-up truck that was observed following the trailer. He later told an FBI agent that paving equipment which had been on the Belshe trailer when it was stolen was "recoverable."

*Violation Two*

On October 8, 1992, Hopson was alleged to have sold a stolen cement hammer[6] to a Mr. Jerry White in Marion, Illinois. The investigation revealed that the cement hammer had been taken from the owner without his consent on July 29, 1992, in Gary, Indiana. The value of a new hammer is $39,000, and its value at the time of sale was $35,000. Hopson sold the hammer for $5,000 to White. Hopson claims he bought the cement hammer from a widow without knowing it was stolen property, yet offered no evidence to support his story or to rebut the government's claim that he was well aware that the hammer was stolen property. The defendant's purchase or theft of the cement hammer and its subsequent resale to a resident of another state is a violation of 18 U.S.C. § 2314 (interstate transportation of stolen property).

*Violation Three*

The defendant, on August 25, 1993, possessed a rear bumper removed from a stolen truck. The bumper was found lying face down in the mud at the defendant's yard during the FBI search of August 25, 1993. Attached to the bumper was a license plate registered to a truck reported stolen in July of 1993.

Hopson again claimed a lack of knowledge of the fact that the bumper with its license plate attached was stolen. This claim is belied by defendant's own words. When confronted by the federal authorities with the evidence of the stolen bumper Hopson stated that in order to avoid being held accountable for the bumper and plate he "need only say that somebody threw [the bumper] across his fence." The sentencing court established that due to the size of the bumper (approxi-

---

**5.** 18 U.S.C. § 2321 provides:

"(a) Whoever buys, receives, possesses, or obtains control of, with intent to sell or otherwise dispose of, a motor vehicle or motor vehicle part, knowing that an identification number for such motor vehicle or part has been removed, obliterated, tampered with, or altered, shall be fined not more than $20,000 or imprisoned not more than ten years, or both.

(b) Subsection (a) does not apply if the removal, obliteration, tampering, or alteration—

(1) is caused by collision or fire; or

(2) is not a violation of section 511 of this title.

(c) As used in this section, the terms 'identification number' and 'motor vehicle' have the meaning given those terms in section 511 of this title."

**6.** A cement hammer is a device mounted on the back of a truck or back hoe that is used to break up pavement and concrete by means of compressed air pressure driving a large metal shaft into the ground.

mately 75 lbs.), the height of defendant's fence (eight feet), and the location in which it was found (fifteen to twenty feet inside of the fence), it was a physical impossibility for it to have been thrown over the eight foot fence into the yard.

*Violation Five*

On August 27, 1993, the defendant, Hopson, was charged with possession of two 32-foot Summit dump trailers with obliterated public and secondary VINs.[7] FBI agent Miller testified that both the visible and the secondary VINs on each trailer had been "either ground off or burned off with a welding instrument." FBI agents also discovered a cab from a Mack semi-tractor trailer inside one of the dump truck bodies; the cab was later determined to be from a stolen truck.[8] Further, sandblasting equipment capable of removing the trucks' paint was present in the defendant's garage. The paint had been removed from both truck bodies, leaving them rusted. The trial court found that the paint was sandblasted from the trucks to disguise the trucks' origin.

The dump trucks were later identified as two specially built vehicles stolen from a Cincinnati, Ohio, construction company. The defendant's possession of these trucks in a ready-for-sale condition is a violation of 18 U.S.C. § 2321 (possession with intent to sell or otherwise dispose of vehicle with obliterated VIN).

*Violation Six*

In the government's statement of probation violations, Hopson, a convicted felon, is alleged to have "had in his possession, custody and control a sawed-off shotgun" on August 25, 1993. During the August 25th search of the yard, the Bureau agents recovered a sawed-off shotgun located behind a night stand next to a bed in a bedroom at the north end of a house trailer located in the yard. The defendant owned the house trailer and used the room at the south end as an office. The defendant denied ownership of the weapon but stated that he knew that one of his sons had obtained it in the state of

Arkansas. The court found that the defendant, a convicted felon, violated 18 U.S.C. § 922(g) because he had possession, control and custody of the premises where the Bureau agents found the gun.

*Violation Eight*

Hopson was charged with possession of a flatbed trailer with an obliterated VIN. This trailer was in the yard at the time of the initial search on August 25th, but was removed prior to the second search on August 27th. Between the time of the two searches, the defendant promised the FBI that nothing would be removed from the yard. The sentencing court found that the defendant's possession of a trailer with an obliterated VIN number with intent to sell or otherwise dispose of it was a violation of federal law. 18 U.S.C. § 2321.

*1993 Sentencing Hearing*

The sentencing court found that Hopson had committed Violations One, Two, Three, Five, Six, and Eight. The trial judge reflecting on her 1988 sentencing of the defendant and expressing her displeasure with the defendant's return to the chop shop business stated:

"In trying to determine why I only imposed a sentence of one year, given Mr. Hopson's extensive prior criminal conduct, and particularly in light of the fact that the prior criminal conduct, before his last conviction, was similar in nature to the charges to which he pled guilty ... I was favorably impressed with the fact that the defendant had a very stable and supportive family.... It did not make a big difference in Mr. Hopson's case.

I find the evidence was overwhelming, in terms of the nature of Mr. Hopson's conduct in recent months, that is, he has continued with the same types of activities with which he was charged in 1988, for which he was arrested on approximately 13 occasions prior to 1988, [and] convicted three times.

---

7. Heavy equipment and trucks have an identification plate prominently displayed in the cab, as well as secondary plates hidden on other parts of the equipment to assist in identifying the owner.

8. The cab as it was situated in the dump truck was not visible from the ground.

It is a sad thing to say, but I do not see any indicia of rehabilitation here, particularly in light of Mr. Hopson's own remarks that indicate absolutely no acceptance of responsibility or remorse."

On October 28, 1993, the district court revoked Hopson's probation on Counts II and III and sentenced him to ten years' incarceration on Count III. The court imposed a consecutive five-year sentence on Count II but suspended execution of that sentence and placed Hopson on five years' probation to be served consecutively to Hopson's ten-year prison term. At the time of sentencing, neither the prosecutor nor the defendant made any reference to the court's earlier sentencing in 1988, wherein the court *according to the defendant,* "promised" a five-year sentence for violation of probation. Before passing sentence the district judge asked the defendant, "Is there any reason why sentence cannot be *reimposed* at this time?" The judge made it clear that she was not punishing the defendant for requesting a probation hearing, but that it was well within her power to enhance the defendant's sentence because of the "fabricated" nature of his defense and the "aggravated" evidence presented to the court.

## II. *DISCUSSION*

The defendant raises two issues on appeal: 1) whether there was sufficient evidence of each of the six probation violations on which the court relied in revoking his probation; and 2) whether the length of the sentence imposed by the trial judge was proper.

### A. *Sufficiency of the Evidence*

The defendant argues that the evidence presented was insufficient to connect him personally with the illicit activities at the 8928 yard. The government presented FBI surveillance reports and Hopson's prior statements demonstrating his ownership and control of the yard. The sentencing court ruled that the government had established that the defendant had constructive possession of the yard: "the shop at 8928 South Holland [Road] was, at all material times, in the possession, custody, and control of Mr. Hopson."

In order to establish constructive possession of the 8928 yard, the government must produce evidence demonstrating the defendant's "ownership, dominion or control over the contraband itself or the premises ... in which the contraband is concealed." *United States v. Galiffa,* 734 F.2d 306, 316 (7th Cir.1984) (citations omitted). The evidence adduced at the hearing demonstrated that the defendant did own the property, and the observations of FBI agents prove that he exercised dominion and control over the yard.

On revocation of probation, an appellant challenging the district court's factual findings bears an extremely heavy burden. *United States v. Thomas,* 934 F.2d 840 (7th Cir.1991). Probation revocation hearings are not formal criminal prosecutions, and in fact "[t]he court need only be reasonably satisfied that the conduct of the probationer has not been as good as required by the conditions of probation and need not find by a preponderance of the evidence that a violation occurred." *Id.* at 846 (citations omitted). In fact, as we have previously ruled, "a district court requires little evidence to find that a probationer has violated his probation conditions." *United States v. Warner,* 830 F.2d 651, 655 (7th Cir.1987). "Whether to revoke probation is within a district court's discretion. On appeal, we review a decision revoking probation only for an abuse of that discretion." *United States v. Bennett,* 955 F.2d 23, 24 (7th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 2970, 119 L.Ed.2d 590 (1992) (citations omitted).

FBI agents testified that they had observed Hopson in the 8928 yard on a regular basis actively participating in the day-to-day activity at the yard. Hopson offered to cooperate with the authorities and readily admitted his and his co-conspirator's involvement. Moreover, while Hopson claimed ignorance of the illegal activities being carried on at the yard, his statements to investigators concerning "recoverable" stolen property evidenced his in-depth knowledge of the illegal activities at the yard. In short, when considering the totality of the evidence presented including the defendant's active participation and

direction of the "chop shop" operation, coupled with his sale of the cement hammer (Violation Two) and his assistance in the abandonment of the stolen truck in Calumet City, Indiana (Violation One), established to the satisfaction of the sentencing court, as well as this court, that Hopson had not reformed his conduct and thus had not rehabilitated himself.

We agree with the sentencing court's findings that the evidence of the defendant's guilt was "overwhelming." In light of the plethora of incriminating evidence, it is absurd to lend any credence to the defendant's statement that he had no knowledge of what was going on in his yard. The defendant's claim of ignorance, as well as his presentation of witnesses to substantiate his theory, the sentencing judge found to be "wholly unbelievable." We agree.

## B. Length of Sentence

Hopson alleges that the trial judge at his 1988 sentencing hearing imposed a five-year term of incarceration on Counts II and III, then suspended the execution of those terms. The question we must address in interpreting the 1988 sentencing pronouncement is: Did the judge impose a sentence of five years and suspend its execution or suspend imposing any sentence at all and merely use the words "you can anticipate a revocation of probation and five more years in federal custody" to put the fear of the Lord into Hopson in order that he would see the error of his ways and cease and desist from his criminal activity?

 Under 18 U.S.C. § 3651, a sentencing judge may either "suspend the imposition or execution of sentence and place the defendant on probation." [9] Suspending *imposition* of sentence occurs when the judge delays or adjourns the imposition of the actual term of the sentence until such time as the defendant has been adjudged guilty of violating his probation. In this case the judge

does not decide on the specific parameters of a custodial sentence that might be imposed if and when probation is revoked. Suspending the *execution* of a sentence occurs when a judge states the specific term of custodial confinement at the time of sentencing that will result if and when a court of competent jurisdiction revokes the accused's term of probation. "The critical distinction ... is between suspending the *imposition* of a sentence and suspending the *execution* of a sentence. In the former, the sentence determination is deferred, in the latter the sentence is determined but its execution is deferred." *United States v. Barnes,* 948 F.2d 325, 329 (7th Cir.1991) (emphasis in original).

If the trial court suspended the imposition of sentence, it was free to sentence the defendant to any term of imprisonment within the prescribed statutory limitations applicable on the date of the original sentencing. *Roberts v. United States,* 320 U.S. 264, 272–73, 64 S.Ct. 113, 117–18, 88 L.Ed. 41 (1943). However, if the sentencing court suspended the execution of sentence, then, upon revocation of probation, the term of incarceration must be the same as the original length of the suspended sentence. *Id.*

 While defense counsel characterizes the district court's pronouncement as a "promise" to administer a five-year custodial sentence upon violation of probation, the government properly argues that the exact pronouncement is unclear and susceptible to different interpretations. The court's statement concerning the time of confinement is less than clear and ambiguous and not as clear and unambiguous as it should be for a defendant is entitled to know the specific parameters of the period of his sentence or for the conditions of probation imposed. The judge's exact words: "However, I can tell you—in fact, I can promise you that if in that five-year period of probation you engage in any conduct of this nature [dealing in stolen vehicles] or any other criminal conduct, you

<hr>

**9.** 18 U.S.C. § 3651 (repealed as to crimes committed after November 1, 1987) provided in relevant part:

 "Upon entering a judgment of conviction of any offense not punishable by death or life imprisonment, any court having jurisdiction to

try offenses against the United States ... may suspend the imposition or execution of sentence and place the defendant on probation for such period and upon such terms and conditions as the court deems best."

can anticipate a revocation of probation and five more years in federal custody," are not as clear as they could be, but it is quite evident that she was attempting to instill the fear of the Lord in the defendant telling him that if he violated the terms of his probation and returned to a life of crime he could *anticipate (expect)* the imposition of a sentence of five years. If a defendant can expect incarceration to be the result of a violation of probation, it leaves open the possibility that the judge can change his or her mind before setting the exact length of the sentence.

The word *anticipate* is defined as "to feel or realize beforehand; foresee." *American Heritage Dictionary*, 2d ed. 1982, p. 115. Therefore, the defendant was advised that he could *anticipate*, meaning in the future he could *expect*, the imposition of a custodial sentence of five years duration in a federal penitentiary; however, because we agree that the trial court did not recite the term of confinement, the court had the power to exercise its discretion to impose a period of time within the parameters of the particular statute applicable if and when his probation was revoked.

After Hopson's original conviction, this court decided in *United States v. Makres*, 851 F.2d 1016, 1018 (7th Cir.1988), *cert. denied*, 493 U.S. 969, 110 S.Ct. 417, 107 L.Ed.2d 381 (1989), that an order of probation necessarily means that the sentence has been suspended. We also ruled that "if the oral and written sentences conflict, the oral language governs." *Id.* at 1019. In order to clarify the intent of the district court judge, we held that "'[t]he intent to suspend a sentence flows from the language used in the verbal pronouncement of the sentence and ... impreciseness of language will not negate the court's obvious intent....'" *Id.* (quoting *United States v. Raftis*, 427 F.2d 1145, 1146 (8th Cir.1970)).

In this case the verbal pronouncements of both the 1988 and 1993 sentencing hearings are not as clear as they should be, thus the very sentencing language raises questions. At the time of the 1993 sentencing hearing the judge said, "Is there any reason why sentence cannot be *reimposed* at this time?" This statement referring to resentencing is incorrect and improper as it is clear that in 1988 the sentencing judge did not impose a sentence upon the defendant. Because the imposition of the sentence is one of, if not the most important segment of a criminal trial, it is obvious that there must be no doubt whatsoever as to what the specific terms of confinement will be should the defendant violate the conditions of his probation. Therefore we deem it necessary to remand the case to the trial court for a clarification of the actual sentence and/or probation consistent with this opinion. The district court must clarify its 1988 pronouncement of sentence. If the trial judge meant to suspend the execution of a five-year term, then the defendant must be resentenced to five years of incarceration for his probation violations. If the judge meant to suspend the imposition of a five-year term, then there was no error in sentencing the defendant to ten years of incarceration and five years of supervised release.

### III. *CONCLUSION*

For all the aforementioned reasons, we affirm the trial court's decision to revoke the defendant's probation and remand this case to the trial judge with instructions to clarify her 1988 sentencing of Hopson and resentence the defendant based on this opinion.

AFFIRMED IN PART AND REMANDED IN PART.